[No. C005605. Third Dist. Oct. 10, 1990.]

ROBERT G. AALGAARD, Plaintiff and Appellant, v.
MERCHANTS NATIONAL BANK, INC., et al., Defendants and
Respondents.

[Opinion certified for partial publication.*]

———

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part IV.

COUNSEL

Mastagni, Holstedt & Chiurazzi and Richard J. Chiurazzi for Plaintiff and Appellant.

Hubbert, Shanley & Lee and N. Paul Shanley for Defendants and Respondents.

## OPINION

**SPARKS, Acting P. J.**—The central question in this appeal is whether an action against a national banking association with less than 20 employees, and its officers, for age discrimination under the California statute (Gov. Code, § 12941) and for violation of employment covenants under California law is preempted by section 24, Fifth, of the National Bank Act. (12 U.S.C. § 24, Fifth [Section 24 (Fifth)].) We hold that it is.

Under the act, "[a national banking] association . . . shall have power . . . [¶] To elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, . . . dismiss such officers or any of them at pleasure, and appoint others to fill their places." (§ 24 (Fifth).) Under the California statute, however, an employer may not "discharge [or] dismiss . . . any individual over the age of 40 on the ground of age, except in cases where the law compels or provides for such action." (Gov. Code, § 12941, subd. (a).) In

addition, under California decisional law, an employer's breach of the implied covenant of good faith and fair dealing gives rise to a cause of action for breach of contract. (*Newman v. Emerson Radio Corp.* (1989) 48 Cal.3d 973 [258 Cal.Rptr. 592, 772 P.2d 1059]; *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373].) Similarly, an employer's breach of an implied contract not to discharge except for good cause also gives rise to a cause of action for breach of contract. (*Koehrer v. Superior Court* (1986) 181 Cal.App.3d 1155 [226 Cal.Rptr. 820]; *Pugh v. See's Candies, Inc.* (1981) 116 Cal.App.3d 311 [171 Cal.Rptr. 917].) The issue is whether these state-based causes of action are preempted by the federal statute.

Following his separation from employment as the cashier of defendant Merchants National Bank, Inc. (Bank), plaintiff Robert G. Aalgaard brought this action against the Bank and two of its officers. By the time of his second amended complaint the action had evolved into one for a violation of the state age discrimination statute (Gov. Code, § 12941), a tortious breach of the covenant of good faith and fair dealing implied in his employment contract with the Bank,[1] a breach of an implied covenant to discharge him only for good cause, and a conspiracy to interfere with his contractual relationship with defendant Bank. The corporate and individual defendants[2] repeatedly and unsuccessfully asserted below that all four causes of action were preempted by section 24 (Fifth). They further contended that there was no triable controversy concerning the fact that they did not breach any covenant of good faith or fair dealing, that there was no implied covenant not to discharge except for good cause, that the individual defendants did not participate in any conspiracy and in any event were protected by the manager's privilege, that there was no outrageous conduct warranting the award of punitive damages, and that plaintiff could not recover for any mental suffering because of the exclusionary provisions of the Workers' Compensation Act. Following a third summary judgment motion incorporating these arguments yet one more time, the trial court granted the motion without specifying the basis in its order. From the transcript of the hearing on the motion, however, it is clear the court based its ruling solely on the preemption issue. The trial judge stated, "I do think the Federal Statute is specific. And I think it fits right here. And I think the Board can terminate at it[s] pleasure. And that's what they did . . . . So for that reason, I'm going to go ahead and grant the summary judgments."

---

[1] Following the decisions in *Foley* and *Newman*, a breach of this covenant is actionable only in contract in the employment context. We will assume for sake of argument that the plaintiff has sufficiently alleged a contractual claim on this cause of action. For convenience, we shall refer to this as a "*Foley* covenant."

[2] The individual defendants are Thomas M. Bolton, Jr., the Bank's president and a member of its board of directors, and Louis Favre, the Bank's executive vice-president.

The plaintiff's appeal challenges all the bases of the defendants' motion. We first conclude that the cause of action for conspiracy to interfere with plaintiff's contractual relationship with the Bank is barred by the manager's privilege. The remaining three causes of action, we next conclude, are preempted by section 24 (Fifth). Accordingly, we reject plaintiff's challenges and affirm the judgment.

## I

### PROCEDURAL HISTORY OF PLAINTIFF'S ACTION

Plaintiff's initial complaint, which contained causes of action only for age discrimination and breach of the *Foley* covenant, was filed in September 1986. The defendants demurred to it in November 1986 on the basis of federal preemption. Judge Warren overruled the demurrer in December 1986. The defendants then moved for summary judgment on this basis in August 1987. Judge Warren denied the motion as to the age discrimination claim, and—with respect to the *Foley* claim—treated the motion as one for judgment on the pleadings, granting it without leave to amend as to the individual defendants and with leave to amend as to the Bank. The plaintiff next filed an amended complaint for age discrimination and (solely against the Bank) breach of the *Foley* and *Pugh* covenants. The Bank (and, unaccountably, the individual defendants who were not part of the claims) demurred in October 1987 to the two latter causes of action on the basis of preemption. Judge Warren again overruled. Undaunted, the defendants moved for summary judgment in January 1988 on all claims; among the grounds was the hydra of preemption. Judge Anthony DeCristoforo denied the motion on procedural grounds. The plaintiff filed a second amended complaint in March 1988 to add the count for conspiracy to interfere with contractual rights. The defendants brought the successful summary judgment motion (styling it as a renewed motion) before Judge DeCristoforo in November 1988. This appeal followed.

## II

### THE SCOPE OF REVIEW ON APPEAL FROM THIS MOTION

■ "Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we independently review them on appeal, applying the same three-step analysis required of the trial court . . . . First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading . . . . [¶] [Second], we determine whether the moving party's showing has established facts which negate the opponent's claim and

justify a judgment in [the] movant's favor . . . . [¶] When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue." (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203], citations omitted.)

As we shall ultimately demonstrate, there are few material factual issues relevant to the questions of law raised in this appeal. But to be orderly, we shall follow the *AARTS* paradigm.

III

THE COMPLAINT AND THE SUMMARY JUDGMENT PAPERS

A.

For purposes of his age discrimination cause of action, plaintiff alleged that he was first hired by the Bank in January 1956. By 1978, he had become a full cashier and began attending meetings of the Bank's board of directors as an officer of the Bank (acting at the meetings in the capacity of secretary). Plaintiff alleged his competence at his job (as evidenced by his steadily increasing responsibilities over the course of three decades) and his belief that beginning in 1984 "most of [his] duties and responsibilities were gradually taken away from him and given to other younger individuals." By November 22, 1985, plaintiff had attained the age of 57 and intended to work with the Bank for a minimum of 8 additional years. But on that date, defendants Bolton and Favre told the plaintiff the board had decided he should take an early retirement; defendant Bolton demanded the plaintiff draft a letter making such a request. The plaintiff cleared out his desk and left without drawing up the letter. He returned on December 4th with the requested letter,[3] and was given written confirmation, dated November 22, of "the Board of Directors['] action in connection with your request for early retirement." The wrongful acts of defendants "were oppressive and were done maliciously with an intention and design of discriminating against Plaintiff based upon his age." Plaintiff further alleged that he had filed a complaint with the California Department of Fair Employment and Housing in June 1985 and received a right-to-sue letter in July 1986. On this cause of action, plaintiff sought the imposition of liability upon both the corporate and individual defendants.

---

[3] In that letter, plaintiff wrote: "I hereby request early retirement effective Dec. 31, 1985 under the terms and conditions stated below." Those conditions related to payment of pension funds, salary, insurance premium and the additional payment "on Jan. 2, 1986 [of] $25,000.00 plus end of the year bonus of one month[']s pay, $3800.00."

For purposes of his *Foley* cause of action against the Bank, he alleged he was the third most highly paid employee of the Bank. Had he continued working until normal retirement, it would have been at a substantial cost to the Bank. Therefore, without good cause, the Bank began to reassign his duties in order to humiliate him into resigning. At a board meeting on November 21, of which the plaintiff was not informed, the individual defendants falsely represented to the other board members that the plaintiff's performance for the prior three years had been inadequate; the other board members had no way of knowing these representations were false. This course of conduct was alleged to be a breach of the covenant of good faith and fair dealing.

For the purposes of the *Pugh* claim against the Bank, he alleged that a covenant was in fact implied limiting the Bank's right to terminate him except for good cause. As a result, he had a reasonable expectation of continued employment based on his 30 years of employment, his receipt of only minor criticism throughout this time, his continually increasing salary, and his observation of the Bank's practice of not terminating people except after progressive discipline and for good cause. Plaintiff's termination and the Bank's mendacious insistence that it indeed had good cause for terminating him amounted to a breach of implied-in-fact covenant.

In his fourth cause of action against the individual defendants, he alleged they conspired to interfere with his business relationship with the Bank. The course of conduct previously described was the wrongful way in which they accomplished this.

Although plaintiff alleged defendant Bank "was a California corporation duly organized and existing under the laws of the State of California," the documents in support of the summary judgment motion revealed a certificate of authority had been issued by the United States Comptroller of the Currency to Merchants National Bank of Sacramento. Based upon that showing, plaintiff ultimately conceded it was undisputed that the Bank was a chartered national bank.

In support of their motion for summary judgment, defendants declared, among other things, that at the board meeting on November 21, 1985, "the Board of Directors unanimously agreed that due to the Plaintiff['s] . . . poor performance over the last three (3) years and lack of initiative, he be offered a chance to retire early or be terminated." In opposition to defendants' summary judgment motion, plaintiff reasserted the factual claims set forth in his complaint and then embellished them. As a result plaintiff claims that his declaration raises a triable issue as to whether it was the individual defendants and not the board of directors as a whole who either terminated him or at least constructively terminated him.

## B.

As we have noted, the defendants adhered to the dramatic convention of thrice taking an action—moving for summary judgment—before achieving success. The three motions are essentially echoes of one another. Judge DeCristoforo had found the second to be no more than a renewal of the first and denied it for failure to comply with the statutory requirement of an affidavit. (Code Civ. Proc., § 1008, subd. (b).) The third motion formally complied with the statute by including counsel's allegation that declarations of the board directors (stating it was the action of the board which had terminated the plaintiff) were new and previously unavailable evidence which were now included in the third (and second) motion but not the first. The third motion, in point of fact, relied on the papers filed for the second motion. The plaintiff similarly incorporated in the third motion his previous filings and objections.

In this sea of paper, only the following evidence is relevant. For purposes of the summary judgment motion, it is sufficient to note the board minutes and declarations of the directors establish it was they who ultimately offered the plaintiff the claimed Hobson's choice of termination or forced retire-ment.[4] For purposes of the preemption question and the resolution of the interference with contract cause of action, it suffices to note the defendants produced declarations that they had valid reasons for retiring the plaintiff, countered by the plaintiff's declarations setting forth facts from which it might be inferred these reasons had no basis in truth. At this stage of the proceedings, the defendants are not even concerned with whether they had good cause to discharge him, denoting the question "irrelevant" for pur-poses of their summary judgment motion.

## IV

## DISCUSSION*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## V

## MANAGER'S PRIVILEGE BARS INTERFERENCE WITH CONTRACT CLAIM

Because the defendants have advanced no argument regarding the fourth cause of action, we could take this as a waiver. However, since it is our

---

[4] Notwithstanding the plaintiff's arguments that the interpretation of these minutes raises questions of fact, we conclude as a matter of law that they do not.

* See footnote, *ante*, page 674.

obligation to affirm the decision of the lower court unless we can find no basis for doing so, we address the merits of this claim.

■■■ As noted earlier, the fourth cause of action pled a conspiracy by the individual defendants to interfere with the plaintiff's economic relationship with the Bank through a campaign of misrepresentations.[5] ■■ "An action in tort will lie for the intentional interference by a third person with a contractual relationship either by unlawful means or by means otherwise lawful when there is a lack of sufficient justification. The tort is a specie of the broader tort of interference with prospective economic advantage[,] involving similarity in elementary makeup and conduct while differing only in the existence of a legally binding contract . . . . Privilege or justification[6] for the interference is an affirmative defense, not an element of plaintiff's cause of action . . . ." (*H & M Associates* v. *City of El Centro* (1980) 109 Cal.App.3d 399, 405 [167 Cal.Rptr. 392] [internal punctuation & citations deleted].)

The defendants' federal preemption argument is of no import with respect to this tort, because "even though the relationship is terminable at will, . . . the fact that a contract is at the will of the parties, . . . does not make it one at the will of others. Thus the fact that the Bank was privileged to discharge plaintiff at any time does not necessarily privilege a third party unjustifiably to induce the termination." (*Kozlowsky* v. *Westminster Nat. Bank* (1970) 6 Cal.App.3d 593, 598 [86 Cal.Rptr. 52] [internal quotation marks & citation deleted]; *Marczak* v. *Drexel Nat. Bank* (1989) 186 Ill.App.3d 640 [542 N.E.2d 787] [interference with contract claim is not inconsistent with employment at will]; *EIB* v. *Federal Reserve Bank of Kansas City* (Mo.App. 1982) 633 S.W.2d 432 [breach of contract action preempted, but tort of interfering with business relationship may proceed].) If the individual defendants were not acting on behalf of the board in their dealings with plaintiff, then the preemptive shelter of section 24 (Fifth) would not protect them. "The federal statute (12 U.S.C. § 24, *supra*) empowers the board of directors, not the stockholders or an individual director, to dismiss an officer." (*Kozlowsky, supra*, 6 Cal.App.3d at p. 600.) Thus, even though the board ultimately terminated plaintiff and hence exempted the Bank from liability under section 24 (Fifth), the evidence is conflicting

---

[5] The conspiracy portion of the count is irrelevant for our purposes, because it is the long-standing rule in this state that a conspiracy itself does not give rise to a cause of action unless a civil wrong resulting in damage has been committed. (*Herron* v. *Hughes et als.* (1864) 25 Cal. 555, 560. See also 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 45, p. 108 and cases cited there.)

[6] Modern analysts, following the Restatement Second of Torts, eschew use of either term in order to avoid questions of burden of proof, preferring the phrase "improper interference." The factors in determining whether the interference was improper remain essentially the same as with privilege or justification. (*Environmental Planning & Information Council* v. *Superior Court* (1984) 36 Cal.3d 188, 194, fn. 3 [203 Cal.Rptr. 127, 680 P.2d 1086 ].)

on whether the individual defendants were acting on behalf of the board when they allegedly interfered with plaintiff's contractual relationship with the Bank. Since the evidence is conflicting on this point, the issue cannot be resolved on preemption grounds at this stage of the proceedings. (See *Mahoney* v. *Crocker Nat. Bank* (N.D.Cal. 1983) 571 F.Supp. 287, 291.)

■ But that does not end the matter. The defendants also relied below on the so-called "manager's privilege" as to this cause of action. That privilege has been described by one court this way: "The privilege to induce an otherwise apparently tortious breach of contract is extended by law to further certain social interests deemed of sufficient importance to merit protection from liability. Thus, a manager or agent may, with impersonal or disinterested motive, properly endeavor to protect the interests of his principal by counseling the breach of a contract with a third party which he reasonably believes to be harmful to his employer's best interests." (*Olivet* v. *Frischling* (1980) 104 Cal.App.3d 831, 840-841 [164 Cal.Rptr. 87], fn. omitted; see also 3 Levy et al., Cal. Torts (1990 ed.) Business Torts, § 40.119[3], pp. 40-165 to 40-166.) Defendants claim this nonstatutory privilege is absolute, entitling them to judgment as a matter of law. The plaintiff argues that the defendants' justification is a question of fact and that triable issues exist with respect to it.

The question of whether the manager's privilege is absolute (and thus requiring the instant individual defendants to show only that they occupied such a position with defendant Bank) or qualified (requiring them to establish their prima facie case entitlement to it) is somewhat muddled in California law. In *Boyson* v. *Thorn* (1893) 98 Cal. 578 [33 P. 492], the court apparently held that the state of mind of a managerial defendant is irrelevant if the means by which the defendant brought about the breach were lawful. *In Imperial Ice Co.* v. *Rossier* (1941) 18 Cal.2d 33 [112 P.2d 631], the court expanded upon the nature of the tort of interference with contractual relations. It held that the tort could be based on breaches induced by unlawful means, or by lawful means without justification.[7] (*Id.* at p. 35.) Justification was said to exist where the person inducing the breach is protecting an interest of greater social value than contractual stability. (*Ibid.*) With respect to the defendant's state of mind, the court held, "The presence or absence of ill-will . . . is immaterial, except as it indicates *whether or not an interest is actually being protected.*" (*Id.* at p. 36 [italics supplied].) The court ultimately held that the mere purpose of obtaining an economic advantage is not sufficient to justify a competitor's inducement of a breach a contract. (*Id.* at pp. 34, 37.) Next, in *Collins* v. *Vickter Manor, Inc.* (1957) 47 Cal.2d 875 [306 P.2d 783], the court stated with respect to an

[7] The court repudiated cases which had interpreted *Boyson* as holding that breaches induced by lawful means were never actionable. (*Id.* at pp. 37-38.)

interference cause of action against individual officers/directors of a corporation (*id*. at p. 879), "[w]hether or not [the individual defendants] were privileged to cause the corporation to discontinue its relations with plaintiffs, *in the belief that such a course of action was in the best interests of the corporation*, is a matter of defense, to be decided by a resolution of the factual issues presumptively involved [and thus improper to resolve on demurrer]." (*Id*. at p. 883 [italics supplied].)

It should be clear from these cases that the privilege should not based merely upon a defendant's position with respect to the breaching party but upon the defendant's purpose in inducing the breach.[8] Nevertheless, there are a number of authorities which seem to suggest, without much analysis, that it is an absolute privilege.[9]

However, we need not unravel this knot of authority. Even if the defendants' privilege is not absolute the uncontradicted evidence shows the defendants acted not in self-interest (indeed, there is not the slightest indica-

---

[8] This position is reflected in a number of appellate decisions. (*Rosenfeld, Meyer & Susman* v. *Cohen* (1983) 146 Cal.App.3d 200, 227-230 [194 Cal.Rptr. 180] [agency status does not itself entitle one to absolute privilege; " 'The first step is to determine if the relationship between the parties involves the type of interests that the privilege is designed to protect.The second step is to determine whether, in light of the nature and importance of the above relationship, the advisor's intent in inducing the breach was proper. This second step . . . is necessary because . . . the privilege is qualified and not absolute. Where the intent is not proper, the privilege is lost.' "]; *Los Angeles Airways, Inc.* v. *Davis* (9th Cir. 1982) 687 F.2d 321, 325-328 [same, applying California law]; *McCabe* v. *General Foods Corp.* (9th Cir. 1987) 811 F.2d 1336, 1339 [same]; *Olivet* v. *Frischling, supra*, 104 Cal.App.3d at p. 841 ["Thus, a manager or agent may, with impersonal or disinterested motive, properly endeavor to protect the interests of his principal by counseling the breach of a contract with a third party which he reasonably believes to be harmful to his employer's best interests"; unavailable where it is alleged defendant acted to further own interests]; cf. *Sade Shoe Co.* v. *Oschin & Snyder* (1984) 162 Cal.App.3d 1174, 1181 [209 Cal.Rptr. 124] ["the privilege 'is at most a qualified one dependent for its existence upon the circumstances of the case. It is essentially a state-of-mind privilege . . . . The resolution of the issue turns on the defendant's predominant purpose in inducing the breach of the contract' "; therefore third party with financial interest cannot prevail on demurrer]; *Culcal Stylco, Inc.* v. *Vornado, Inc.* (1972) 26 Cal.App.3d 879, 883 [103 Cal.Rptr. 419] [same]; *Richardson* v. *La Rancherita* (1979) 98 Cal.App.3d 73, 80-81 [159 Cal.Rptr. 285] [one inducing a breach in order to protect a financial interest must do so in good faith]; see Rest.2d Torts, §§ 767-773, pp. 26-52.)

[9] *Lawless* v. *Brotherhood of Painters* (1956) 143 Cal.App.2d 474, 478 [300 P.2d 159], simply states a servant is privileged to induce breach of a master's contract without any discussion of the factual context. *Mallard* v. *Boring* (1960) 182 Cal.App.2d 390, 393-394 [6 Cal.Rptr. 171], simply cites *Lawless*; it also notes defendant's act was the act of the corporation, so there is no inducement separate from the breach itself. *Marin* v. *Jacuzzi* (1964) 224 Cal.App.2d 549, 553-554 [36 Cal.Rptr. 880] is an admixture of the concepts of "employment at will," manager's privilege, and—like *Mallard* —the defendant's act being that of the corporation. *Becket* v. *Welton Becket & Associates* (1974) 39 Cal.App.3d 815, 818, 820, 823 [114 Cal.Rptr. 531], held it was sufficient to establish privilege that the complaint alleged defendant was a corporate officer; however, the case can also be explained on the basis of the defendant's act being that of the corporation. *Wise* v. *Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 72-73 [35 Cal.Rptr. 652], is similar. (Also see *Kozlowsky, supra*, 6 Cal.App.3d at p. 599.)

tion the individual defendants personally benefitted), but in the Bank's interest by attempting to reduce the Bank's costs through elimination of a highly paid employee, albeit by allegedly impermissible means, and replacing him with lower-paid workers. With this as their purpose, the privilege remains intact even if it is merely qualified and not absolute. (*Los Angeles Airways, Inc., supra*, 687 F.2d at p. 328 ["where, as here, an advisor is motivated in part by a desire to benefit his principal, his conduct in inducing a breach of contract should be privileged"]; *Imperial Ice Co., supra*, 18 Cal.2d at p. 36 [if conduct justified, ill will toward plaintiff irrelevant.]) Since no factual controversy was raised on this point, summary judgment was properly granted on the cause of action for the intentional interference with a contractual right.

## VI

### BREACH OF COVENANTS AND AGE DISCRIMINATION CLAIMS ARE PREEMPTED BY NATIONAL BANK ACT

Having dispatched the interference with contract cause of action, we turn to the remaining three. As we stated at the outset, the main bulwark of the defense in this case has been the claim of preemption. For that reason we begin with an overview of the doctrine of preemption.

■■■■ "The pre-emption doctrine, which has its roots in the Supremacy Clause, U.S. Const, Art VI, cl 2, requires [the reviewing court] to examine congressional intent. Pre-emption may be either express or implied, and 'is compelled where Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.' Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be inferred because '[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' because 'the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,' or because 'the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose.' [¶] Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " (*Fidelity Federal Sav. & Loan Assn.* v. *de la Cuesta* (1982) 458 U.S. 141, 152-153 [73 L.Ed.2d 664, 674-675, 102 S.Ct. 3014], citations omitted. See also *Elsworth* v. *Beech Aircraft Corp.* (1984) 37 Cal.3d 540, 548 [208 Cal.Rptr. 874, 691 P.2d 630].)

■ As applied to national banks, the United States Supreme Court "has often pointed out that national banks are subject to state laws, unless those laws infringe the national banking laws or impose an undue burden on the performance of the banks' functions." (*Anderson Nat. Bank v. Luckett* (1943) 321 U.S. 233, 248 [88 L.Ed. 692, 705, 64 S.Ct. 599, 151 A.L.R. 824].) This application of the preemption doctrine to the National Bank Act was reaffirmed in *Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913 [216 Cal.Rptr. 345, 702 P.2d 503]. In *Perdue*, the California Supreme Court considered whether California law prohibiting banks from exacting unreasonable charges for processing checks drawn on accounts without sufficient funds was preempted by the National Bank Act. The court began by noting that "[a]s the United States Supreme Court explained in *Silkwood v. Kerr-McGee Corp.* (1984) 464 U.S. 238, [78 L.Ed.2d 443, 104 S.Ct. 615], 'state law can be preempted in either of two general ways. If Congress evidences an intent to occupy a given field, any state law falling within that field is preempted. If Congress has not entirely displaced state regulation over the matter in question, state law is still preempted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress . . . .' Defendant bears the burden of persuasion on this issue; '[c]ourts are reluctant to infer preemption, and it is the burden of the party claiming Congress intended to preempt state law to prove it.'" (38 Cal.3d 913, 936-937 [citations omitted].)

The high court then rejected the bank's contention that Congress, by comprehensive regulation, had occupied the field of regulation of contracts between national banks and their depositors. "One hundred and fifteen years of practice under the national banking system argue to the contrary. While nationally chartered banks are subject to the paramount authority of the United States, Congress has declined to provide an entire system of federal law to govern every aspect of national bank operations. Consequently, national banks have traditionally been 'governed in their daily course of business far more by the laws of the State than of the Nation. All their contracts are governed and construed by State laws.' As explained in *National State Bank, Elizabeth, N. J. v. Long* [3d Cir. 1980] 630 F.2d 981, '[w]hatever may be the history of federal-state relations in other fields, regulation of banking has been one of dual control since the passage of the first National Bank Act in 1863 . . . . In only a few instances has Congress explicitly preempted state regulation of national banks. More commonly, it has been left to the courts to delineate the proper boundaries of federal and state supervision. [¶] The judicial test has been a tolerant one. [National banks'] right to contract, collect debts, and acquire and transfer property are all based on state law.' (P. 985.) Thus the rule is that state laws apply,

'the exception being the cessation of the operation of such laws whenever they expressly conflict with the laws of the United States or frustrate the purpose for which the national banks were created, or impair their efficiency to discharge [their] duties . . . .' " (*Perdue, supra,* 38 Cal.3d at pp. 937-938 [fns. & citations omitted].)

■ Given this standard and the judicial history of the National Bank Act, we conclude that the act is not a comprehensive statutory scheme occupying the entire field relating to national banks. Consequently, the application of the state statute prohibiting age discrimination by an employer has not been preempted by a comprehensive federal statutory scheme which occupies the field. "Where Congress has not preempted the entire field, a state law will be upheld if it does not conflict with, or is authorized by, the federal statute." (7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 13, p. 58.) ■ We turn then to the second preemption issue, whether the application of the California statute will create an actual conflict with federal law.[10]

■ "In addition to express or implied pre-emption, a state law also is invalid to the extent that it 'actually conflicts with a . . . federal statute.' Such a conflict will be found when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " (*International Paper Co.* v. *Ouellette* (1987) 479 U.S. 481, 491-492 [93 L.Ed.2d 883, 896, 107 S.Ct. 805] [citations & some internal quotation marks omitted].) The "controlling principle" then is that "any state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause." (*Perez* v. *Campbell* (1971) 402 U.S. 637, 652 [29 L.Ed.2d 233, 244, 91 S.Ct. 1704].

■ The controlling federal statute, section 24 (Fifth), empowers the board of directors of a national bank to "dismiss [designated] officers or any of them at pleasure, . . ."[11] In contrast, the California statute provides in relevant part that "[i]t is an unlawful employment practice for an employer . . . to discharge, dismiss, reduce, suspend, or demote, any individual over the age of 40 on the ground of age, except in cases where the law compels or provides for such action."[12] (Gov. Code, § 12941, subd. (a).) Similarly, as we

---

[10] As we have noted, a conflict also arises when "compliance with both federal and state regulations is a physical impossibility . . . ." (*Florida Avocado Growers* v. *Paul* (1963) 373 U.S. 132, 142-143 [10 L.Ed.2d 248, 257, 83 S.Ct. 1210].) That type of blatant conflict is not tendered here.

[11] In carrying out their duties, the board of directors has been conferred with all necessary incidental powers. Thus, under the statute a national bank is empowered "[t]o exercise by its board of directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; . . . ." (12 U.S.C. § 24, Seventh.)

[12] By statutory definition, an "employer" includes, with exceptions not relevant here, "any person regularly employing five or more persons, or any person acting as an agent of an em-

noted at the outset, the breach of the implied covenant of good faith and fair dealing or the breach of an implied contract not to discharge except for good cause gives rise to a cause of action against the employer for breach of contract. The question to be resolved, therefore, is whether the state age discrimination statute and the state causes of action for breach of contract conflict with section 24 (Fifth).

A part of the National Bank Act (12 U.S.C. § 38), section 24 (Fifth) is a statute of Civil War vintage. (Act of June 3, 1864, ch. 106, § 8 [13 Stat. 101].) When enacted, it contemplated a banking system in which the reputation of bank officers was a crucial component of a bank's solvency. This mindset is demonstrated in the early case of *Westervelt* v. *Mohrenstecher* (8th Cir. 1896) 76 F. 118. There, holders of a bond posted on the performance of a bank's cashier had refused to honor it on the theory it had expired with a previous one-year term of office given the cashier by the bank. The court rejected the theory, noting it was essential to the financial health of a bank that it have unfettered authority to remove immediately any officer to whom had adhered any suspicion of dishonesty or carelessness. "It follows from this principle that, since the act of congress expressly provides that the cashiers of national banks should hold their offices subject to the pleasure of the board of directors, neither the bank nor its board can make time contracts or appointments in violation of that provision." (*Id.* at p. 122; accord *Rankin* v. *Tygard* (8th Cir. 1912) 198 F. 795; cf. *In re Paramount Publix Corp.* (2d Cir. 1937) 90 F.2d 441, 443.) Thus, at the heart of this inviolable dismissal provision is a linkage with public policy protecting the financial stability and fiscal integrity of banks by making it beyond the powers of bank directors to enter into any contract restricting their ability to respond expeditiously to financial threats posed by bank officers. (*Obradovich* v. *Federal Reserve Bank of New York* (S.D.N.Y. 1983) 569 F.Supp. 785, 790; *Armano* v. *Federal Reserve Bank of Boston* (D.Mass. 1979) 468 F.Supp. 674, 676.) As a result, section 24 (Fifth) has been construed as placing "the fullest responsibility upon the directors by giving them the right to discharge such officers at pleasure." (*Copeland* v. *Melrose National Bank of New York* (1930) 229 A.D. 311 [241 N.Y.S. 429, 430] affd. 254 N.Y. 632 [173 N.E. 898].)

In light of this historical purpose, it is not surprising that contractual claims of employment rights have been deemed preempted by section 24 (Fifth) and its twins in analogous federal statutes. This has been true whether the claims have been anchored in express contractual terms, in implied-

ployer, directly or indirectly; the state or any political or civil subdivision thereof and cities." (Gov. Code, § 12926, subd. (c).) A person is defined to include "one or more individuals, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, and receivers or other fiduciaries." (Gov. Code, § 12925, subd. (d).)

in-fact covenants, or in covenants implied in law. And for the most part that has been the case whether the breach of the contractual provision also gives rise to a cause. of action in tort. Unremarkably, therefore, throughout the years "[t]he case law uniformly [has] interpret[ed] this section and substantially similar provisions as rendering unenforceable, as against public policy, all contractual provisions which do not allow a national banking association to discharge its officers at will without incurring liability for breach of contract." (*McGeehan* v. *Bank of New Hampshire, Nat. Ass'n.* (1983) 123 N.H. 83 [455 A.2d 1054, 1055].)

California has long been in accord with this doctrine with respect to express contractual rights of employment.[13] Thus, in *Kozlowsky* v. *Westminster Nat. Bank, supra*, 6 Cal.App.3d 593, the president of a national bank sued for breach of his contract of employment. The *Kozlowsky* court held that section 24 (Fifth) overrode any contract to employ such an officer for a fixed term. "By virtue of this statute the board may dismiss an officer without liability for breach of the agreement to employ." (*Id.* at pp. 596-597.) The same result was reached in *Cox* v. *First Nat. Bank* (1935) 10 Cal.App.2d 302 [52 P.2d 524]. There the cashier of a national bank brought suit against the bank to recover unpaid salary and for salary during vacation periods. On the salary issue, the *Cox* court noted that "[a] contract with the cashier of a national banking association appointing the cashier for a definite period at a fixed salary is void and does not prevent his removal at any time by the board of directors. It will not support an action for damages for discharge nor permit recovery of salary accruing after such discharge." (*Id.* at p. 305.)

Numerous sister state decisions through the years have thrown out contractual claims against federally empowered banks which were in derogation of at-will employment or causes of action relying on such a contract. (See, e.g., *Van Slyke* v. *Andrews* (1920) 146 Minn. 316 [178 N.W. 959, 12 A.L.R. 1068]; *Copeland* v. *Melrose National Bank* (1930) 229 A.D. 311 [241

---

[13] There have been four recent California appellate decisions discussing the breadth of section 24 (Fifth)'s preemptive effect. Three of them are no longer precedent (*Betz* v. *National Bank of Southern California* █ (Cal. App.) [finding a *Tameny* cause of action not preempted; ordered depublished Nov. 17, 1988]; *Schey* v. *Trans Pacific Nat. Bancorp.* █ (Cal.App.) [holding that a *Tameny* cause of action not preempted, that a cause of action for wrongful removal from a directorship not preempted, and that a removal by an executive committee was the delegated act of the board; ordered depublished Apr. 26, 1990]; *Wells Fargo Bank* v. *Superior Court* (1990) 218 Cal.App.3d 329 [267 Cal.Rptr. 49] [discussing scope of who may be considered "officers" under section 24 (Fifth); review granted May 23, 1990 (S014994)]); the fourth we will discuss presently.

N.Y.S. 429], affd. without opn. 254 N.Y. 632; *Kemper* v. *First Nat. Bank of Newton* (1981) 94 Ill.App.3d 169 [418 N.E.2d 819] [noting that since Congress has amended § 24 repeatedly in the face of these interpretations without changing § 24 (Fifth), it has impliedly approved the uniform body of law barring contract actions]; *EIB* v. *Federal Reserve Bank of Kansas City, supra,* 633 S.W.2d 432; *Alfano* v. *First National Bank of Highland* (1985) 111 A.D.2d 960 [490 N.Y.S.2d 56]; *Berry* v. *American Federal Sav.* (Colo.App. 1986) 730 P.2d 905; *Ambro* v. *American Nat. Bank & Trust Co.* (1986) 152 Mich.App. 613 [394 N.W.2d 46]; *Hawkins* v. *Peoples Federal Sav. & Loan Asso.* (1986) 155 Mich.App. 237 [399 N.W.2d 484]; see *St. Yves* v. *Mid State Bank* (1987) 50 Wash.App. 95, 101, fn. 3 [748 P.2d 633] [noting federal banking law overrides contracts, declining to do so under state law].)[14]

There are a handful of more recent federal cases which are significant for purposes of our review of claims based upon express or implied covenants. In *Armano* v. *Federal Reserve Bank of Boston, supra,* 468 F.Supp. 674, an employee of the defendant bank brought an action for breach of contract as well as another claim. The Federal Reserve Act contains a provision similar to section 24 (Fifth) whereby the board of directors is empowered "to dismiss at pleasure such officers or employees." (12 U.S.C. § 341, Fifth.) The district court noted that plaintiff alleged in his complaint that he was terminated without just cause in violation of his contract with defendant. "Clearly, a contract that binds the Bank by requiring just cause for dismissal prevents the Bank from exercising its express power to dismiss an employee at pleasure. By that provision, Congress clearly sought to protect Federal reserve banks from unnecessary restrictions in carrying out their financial responsibility." (*Armano, supra,* 468 F.Supp. at p. 676.) Noting that the judicial interpretation of section 24 (Fifth) in the National Bank Act supported its construction of the statute, the court held that "an employment contract that restricts the Bank's statutory right to terminate at will is in violation of 12 U.S.C.A. § 341, Fifth, and, therefore, unenforceable." (468 F.Supp. at p. 676.)

The Ninth Circuit, construing the same analogous provision in the Federal Reserve Act, rejected the claim of a discharged federal reserve bank employee that under California law he was an "at-will" employee who was entitled to a hearing before being terminated. (*Bollow* v. *Federal Reserve Bank of San Francisco* (9th Cir. 1981) 650 F.2d 1093.) The *Bollow* court

---

[14] A number of courts have held this doctrine precludes any reasonable expectation in continued employment as well, so no property interest for due process purposes can develop. (*Shepherd* v. *Jones* (1982) 136 Cal.App.3d 1049, 1058 [186 Cal.Rptr. 708]; *Scott* v. *Federal Reserve Bank of New York* (S.D.N.Y. 1989) 704 F.Supp. 441, 447; *Little* v. *Federal Reserve Bank of Cleveland* (N.D.Ohio 1988) 601 F.Supp. 1372, 1375; *Jaffe* v. *Federal Reserve Bank of Chicago* (N.D.Ill. 1984) 586 F.Supp. 106, 107-108.)

concluded that "attempts to create such rights by reference to independent sources are violative of the statute and void thereunder. Assuming that [the employee] would indeed have been entitled to certain process rights under California law, such law when applied to reserve bank employees conflicts with section Four, Fifth. In such circumstances, the federal statute must control." (*Id.* at p. 1098.) These two decisions were followed without additional discussion in *Obradovich, supra*, 569 F.Supp. at page 790.

In *Inglis* v. *Feinerman* (9th Cir. 1983) 701 F.2d 97, the Ninth Circuit, this time construing the Federal Home Loan Bank Act, reached the same conclusion with respect to a *Tameny* cause of action. (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330].) Under that act, the bank is empowered "to dismiss at pleasure [its] officers, employees . . . and agents; . . ." (12 U.S.C. § 1432(a).) There a discharged bank employee argued that the bank's right to terminate its employees under the statute should be restricted when the grounds for termination contravene public policy. The *Inglis* court noted that the employee "argues that 12 U.S.C. § 1432(a) should be similarly limited and claims that the real reason for his termination was his insistence that the Bank conform its practices to federal law. We hold that § 1432(a) permits no inroads into the 'dismiss at pleasure' language." (*Inglis, supra*, 701 F.2d at p. 99.)

This long line of cases supports the proposition that employment rights of officers of national banking associations which conflict with the right of the board of directors to dismiss them at pleasure are preempted by section 24 (Fifth) whether those rights arise by virtue of an agreement or are imposed by state law, and whether framed as contractual or tortious causes of action. As these cases illustrate, the essential Congressional purpose reflected in the "at pleasure" provision of section 24 (Fifth) was to confer upon the board of directors sweeping powers of dismissal in order to ensure the fiscal integrity of national banks and to instill public confidence in those financial institutions. State-based employment rights which inhibit or reduce the power of the board to dismiss its officers "at pleasure" thus conflict with section 24 (Fifth) and stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Since these state-based claims would frustrate the full effectiveness of federal law by diminishing the full power of the board to dismiss its officers for the benefit of national banks, they must fall under the supremacy clause.

For the same reasons, we conclude that the age discrimination cause of action is also preempted by section 24 (Fifth). In analogous circumstances, the federal courts have held that state antidiscrimination causes of action may not proceed. Thus, in *Ana Leon T.* v. *Federal Reserve Bank of Chicago* (6th Cir. 1987) 823 F.2d 928, 931, an employee of Colombian origin was

discharged from her employment with a reserve bank. She then filed an action in the federal district court claiming discrimination under title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e) and the Michigan antidiscrimination act. The lower court dismissed the action for failure to state a claim. The employee appealed and the Sixth Circuit affirmed. "Leon's claim was also examined under Michigan's Elliott-Larsen Act. That Act creates certain rights in employment under state law in Michigan. For example, an employer is prohibited from discriminating against an individual with respect to employment on account of race, color, national origin, religion, age, sex, weight, height, or marital status. Mich. Comp. Laws Ann. § 37.2202(1)(a). However, inasmuch as Leon was an employee of a Federal Reserve Bank, her rights under the Elliott-Larsen Act were preempted by federal law. Section 4, Fifth, of the Federal Reserve Act, 12 U.S.C. § 341, Fifth, specifically provides that employees of a Federal Reserve Bank may be dismissed 'at pleasure.' This provision preempts any state-created employment right to the contrary. [¶] Although a claim of discrimination based on national origin could not have been brought under the Elliott-Larsen Act, Leon could have brought her claim under Title VII of the Civil Rights Act of 1964." (*Id.* at p. 931.) However, since it was unclear whether the employee timely brought her claim under title VII, the court remanded the title VII claim for further consideration. (*Id.* at p. 932.) For similar reasons, *Osei-Bonsu* v. *Federal Home Loan Bank of New York* (S.D.N.Y. 1989) 726 F.Supp. 95, 97-98, reached the same conclusion with respect to employees of Federal Home Loan Banks which are empowered to "dismiss at pleasure [their] officers, employees, attorneys, and agents; . . ." (12 U.S.C. § 1432(a).) The court held that a state rights agency had no jurisdiction over a claim of racial discrimination against the banking institution in question by virtue of dismiss-at-pleasure language in the relevant federal statute.

Plaintiff counters that the preemption doctrine cannot be applied to his state age discrimination claim because Congress has enacted a comparable antidiscrimination statute. By that enactment, he contends, "Congress intended and encouraged states themselves to enact far broader regulations prohibiting discrimination on the basis of age by specifically stating that Federal Law does not affect the jurisdiction of state agencies performing 'like functions.' " It is true that Congress has enacted the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621 et seq.) banning age discrimination by employers employing more than 20 persons in industries affecting commerce.[15] (29 U.S.C. §§ 623, 630 (a) & (b).) It is also true that the federal age discrimination statute further provides that "[n]othing in

---

[15] This federal statute has no application to the defendant Bank in this case because at all relevant times it never employed 20 or more employees.

this chapter shall affect the jurisdiction of any agency of any State performing like functions with regard to discriminatory employment practices on account of age except that upon commencement of action under this chapter such action shall supersede any State action." (29 U.S.C. § 633 (a).) Plaintiff argues that this savings clause reflects "a Congressional intent that States may enact broader statutes prohibiting age discrimination. Consequently, there is no conflict between the statutes that prohibit discrimination in employment on the basis of age and the dismissal at pleasure language in the national bank act." We disagree. It is not reasonable to read this savings clause as reflecting a congressional intent that state age discrimination statutes may nullify federal legislation which has not been repealed directly or by implication. Plaintiff, not surprisingly, cites no authority for such a novel claim. The federal age discrimination act provides no exception for national banks (or any other form of federally chartered financial institution) and since it was enacted long after the National Bank Act it may well be that under "familiar statutory interpretation, when there is such a conflict, the most recent and more specific congressional pronouncement will prevail over a prior, more generalized statute." (*National Resources Defense Council* v. *U.S.E.P.A.* (1st Cir. 1987) 824 F.2d 1258, 1278; see also *Morton* v. *Mancari* (1974) 417 U.S. 535, 550 [41 L.Ed.2d 290, 300, 94 S.Ct. 2474]; *Woodard* v. *Southern Cal. Permanente Medical Group* (1985) 171 Cal.App.3d 656, 664 [217 Cal.Rptr. 514]; 2A Sutherland, Statutory Construction (4th ed. 1984) § 51.02, pp. 453-454.) But even if preemption can no longer be applied to those large banks, it does not follow that Congress intended that small national banks exempted from the provisions of the federal age discrimination statute because of size should be bound by more sweeping state statutes. By implication, Congress arguably has decreed that national banks with 20 or more employees are bound by the federal age discrimination statute. But as to national banks with less than 20 employees, the National Bank Act and the federal discrimination statute are not irreconcilable. Thus, a repeal by implication cannot be asserted as to exempted small national banks because there is no conflict as to them between section 24 (Fifth) of the National Bank Act and the federal Age Discrimination in Employment Act. As to those small national banks, the boards of directors still retain the power to dismiss their officers "at pleasure" without regard to age, a power conferred by a federal statute which has never been repealed. Consequently, the extant federal statute prevails and a conflicting state statute cannot be applied to small national banks having less than 20 employees. (See, e.g., *E. E. O. C.* v. *County of Santa Barbara* (9th Cir. 1982) 666 F.2d 373, 378.)

Plaintiff's reliance upon *Simpson* v. *Alaska State Com'n for Human Rights* (D.Alaska 1976) 423 F.Supp. 552, is misplaced. In *Simpson*, the defendant employer contended that the Alaska age discrimination statute

had been preempted by the federal act. The District Court rejected that claim, noting that Congress only intended to establish minimum standards in the federal act. (*Id.* at p. 556.) "Since there are no specific conflicts between the state and federal statutes and since Congress has expressly left the states the power to act in this field, the fact that Alaska has gone beyond the federal government in enacting a complementary scheme in this area does not make the Alaska law void." (*Ibid.*) In this case, unlike *Simpson*, there is a conflict between a federal statute, namely the unimpaired portion of section 24 (Fifth), and the California statute. Because there is an actual conflict, the state statute must give way.

Since the state age discrimination statute cannot be constitutionally applied to national banks, it follows that the trial court did not err in granting summary judgment in favor of both the Bank and the individual defendants. (*Bollow* v. *Federal Reserve Bank of San Francisco, supra,* 650 F.2d 1093, 1098.)

## DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal.

Sims, J., and Scotland, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 4, 1991. Mosk, J., was of the opinion that the petition should be granted.