[No. D025818. Fourth Dist., Div. One. Oct. 19, 1998.]

CHRISTOPHER G. SHEPPARD, Plaintiff and Appellant, v.
LOU FREEMAN et al., Defendants and Respondents.

## COUNSEL

Haas & Hout and R. Ted Haas for Plaintiff and Appellant.

Wallin & Klarich and Harris E. Kershnar as Amicus Curiae on behalf of Plaintiff and Appellant.

Preston, Gates & Ellis, Jane H. Barrett, Mark B. Tuvin and Kathleen O. Peterson for Defendants and Respondents.

Paul Grossman, John J. Gallagher, Neal D. Mollen, Margaret H. Spurlin, Robert J. DeLucia, Luce, Forward, Hamilton & Scripps, George S. Howard, Jr., and John D. Edson as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**McINTYRE, J.**—After Christopher G. Sheppard was fired from his job with Southwest Airlines (Southwest), he sued both Southwest and coworkers

Lou Freeman, Roni Hardiman, Alan Godfrey, Jon Tree, and Rod Jones, individually, for their alleged conduct relating to his termination. The trial court entered judgment in favor of the coworkers, after sustaining demurrers without leave to amend in favor of some and granting summary judgment in favor of others. Sheppard appeals, contending he may sue his coworkers for interference with contract and prospective economic advantage, libel, and infliction of emotional distress, based on their having falsely reported to Southwest that he was incompetent.

 We hold that except where a statutory exception applies, an employee or former employee cannot sue other employees based on their conduct relating to personnel actions. We note that the right to sue for libel is governed by statute, and that the Legislature has prescribed the circumstances under·which this cause of action and the defenses and privileges pertaining thereto, may lie. (See Civ. Code, §§ 43, 45, 47-48.) Thus, we reverse the judgment as it pertains to Sheppard's claim for libel. We affirm the judgment as to all other causes of action.[1]

FACTUAL AND PROCEDURAL BACKGROUND

After four and one-half years as a first officer pilot for Southwest, Sheppard was terminated in June 1994 after he failed Southwest's mandatory captain upgrade, as provided by the collective bargaining agreement between Southwest and the Southwest Airlines Pilot's Association.[2]

Sheppard filed a grievance under the collective bargaining agreement over his termination. He claimed that evaluations of his performance had been falsified in an elaborate conspiracy among his coworkers, which caused him to fail to be upgraded to captain and ultimately caused his termination. Specifically, Sheppard contended that another pilot, Freeman, had had an extramarital affair with Hardiman, a flight attendant with whom Sheppard had had a bitter argument. After the argument, Hardiman harbored ill will toward Sheppard and used her influence over Freeman to secure his assistance in attempting to have Sheppard fired. Freeman then enlisted Tree, Jones and Godfrey (who was one of his subordinates) in the conspiracy, and they purportedly recruited other "check airmen" to fail Sheppard during his

_____

[1]Sheppard's causes of action other than libel are not based on any statute, but rather, were created by the common law. Thus, for the reasons set forth herein, it is proper and appropriate for the court to limit them in the employment context.

[2]The Railway Labor Act mandates resolution of all disputes concerning the terms of collective bargaining agreements through internal grievance and appeal processes, culminating in binding arbitration before tribunals called boards of adjustment. (45 U.S.C. § 153 First, Second; *Consol. Rail Corp.* v. *Railway Labor Executives* (1989) 491 U.S. 299, 302 [109 S.Ct. 2477, 2480, 105 L.Ed.2d 250].)

performance evaluations, which resulted in his termination. However, after a two-day hearing, an arbitration tribunal rejected Sheppard's claims and upheld his termination.

Sheppard then filed a verified complaint arising from his termination against Southwest and his coworkers. Southwest removed the case to federal court, where the action against it for wrongful termination was dismissed as preempted by the Railway Labor Act. (45 U.S.C. § 151 et seq.) However, the court held that the act did not preempt Sheppard's tort claims against individual defendants, and remanded those claims to the superior court.[3]

In the superior court, Jones and Tree filed demurrers and motions to strike, while Freeman, Hardiman and Godfrey filed answers and sought summary judgment. The trial court sustained the demurrers without leave to amend, granted the summary judgment motions, and denied Sheppard's motion for leave to amend his complaint to allege that his coworkers were not acting within the course and scope of their employment with Southwest. Judgment was entered accordingly, and this appeal ensued.

### Discussion

■ Disposition of this appeal turns on our resolution of an issue of first impression: whether an employee or former employee can sue other coemployees individually based on their conduct relating to personnel actions, e.g., termination, demotion, discipline, transfers, compensation setting, work assignments, and/or performance appraisals. We conclude that except where mandated by statute, such actions are barred, whether or not the employees are determined to have been acting within their scope of employment and regardless of their personal motives.[4]

### *The Holding of the Trial Court*

The trial court sustained the demurrers brought by Tree and Jones without leave to amend, in part because it deemed that claims against coworkers for conduct related to Sheppard's termination were barred by *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 663 [254 Cal.Rptr. 211, 765 P.2d

---

[3]It appears that federal legislation enacted in 1996 would also prevent Sheppard or any other person who applies for a job as a pilot from bringing state tort claims against former coemployees who have entered any information on his job records, including pilot evaluations. (49 U.S.C. § 44936(g).) Here, Sheppard has not brought his tort claims as a job applicant who alleges harm based on the sharing of his records. (See 49 U.S.C. § 44936(f) & (g).) Rather, his claims derive solely from his termination from Southwest and are outside the purview of 49 United States Code section 44936(g).

[4]We do not intend by this opinion to limit coemployee liability for torts involving physical injury.

373], *Hunter v. Up-Right, Inc.* (1993) 6 Cal.4th 1174, 1178 [26 Cal.Rptr.2d 8, 864 P.2d 88], and *Soules v. Cadam, Inc.* (1991) 2 Cal.App.4th 390, 396, footnote 1, 404 [3 Cal.Rptr.2d 6], disapproved on other grounds in *Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1251 [32 Cal.Rptr.2d 223, 876 P.2d 1022]. The court also granted Hardiman's, Freeman's and Godfrey's motions for summary judgment, based on Sheppard's failure to create a triable issue that they were acting outside the course and scope of their employment, or were not protected by the managerial privilege (see *Marin v. Jacuzzi* (1964) 224 Cal.App.2d 549, 554 [36 Cal.Rptr. 880]).

### Coworker Liability

■ We note that the issue at hand does not fall within the specific purview of *Foley*. *Foley* limited tort claims arising out of the termination of an employment relationship, holding that an employee has an actionable claim only where the employer's conduct violates public policy. (See, e.g., *Foley v. Interactive Data Corp., supra,* 47 Cal.3d at pp. 669-670; *Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1090 [4 Cal.Rptr.2d 874, 824 P.2d 680].) Indeed, to support a tort action for wrongful discharge, " '. . . the policy in question must involve a matter that affects society at large rather than a purely personal or proprietary interest of the plaintiff or employer,' " and must be " 'fundamental' " and " 'substantial,' " as well as " 'well established' " at the time of the discharge. (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 889 [66 Cal.Rptr.2d 888, 941 P.2d 1157], quoting *Foley v. Interactive Data Corp., supra,* 47 Cal.3d at pp. 669-670.) However, these concerns pertain to employer liability to an employee, not to liability of coemployees. (See *Jacobs v. Universal Development Corp.* (1997) 53 Cal.App.4th 692, 704 [62 Cal.Rptr.2d 446] [only an employer can be liable for tortious discharge].)

■ Thus, we have found little analysis of coworker liability under the principles of *Foley* and its progeny.[5] However, we recognize the deleterious effects on business if disciplined employees may avoid *Foley*'s bar by simply alleging malice and suing coemployees for damages on alternative

---

[5]We also have found only limited analyses of the issue of coworker liability in other states. Of those which have considered the question, several took approaches which reflected the need to contain burgeoning liability theories in this arena. The Minnesota Supreme Court in dicta rejected suits against coworkers, on grounds the coworkers' conduct was not a cause of the dismissal as a matter of law. (*Nordling v. Northern States Power Co.* (Minn. 1991) 478 N.W.2d 498, 507.) Similarly, the Indiana Supreme Court found the employer essentially substituted its will for that of the individual who committed the tortious acts. (*Perry v. Stitzer Buick GMC, Inc.* (Ind. 1994) 637 N.E.2d 1282, 1287.) One Georgia court of appeal took the position that critical expressions of personal opinion arising from a personality conflict should simply not be litigated in a court of law. (*Singleton v. Itson* (1989) 192 Ga.App. 78 [383 S.E.2d 598, 599].)

tort theories, when the identical personnel action cannot give rise to tort damages against the employer. Indeed, *Jensen* v. *Hewlett-Packard Co.* (1993) 14 Cal.App.4th 958, 965 [18 Cal.Rptr.2d 83], observes that, under *Foley*, the proper remedy against an employer for alleged falsified performance reviews is an action in contract. *Hunter* v. *Up-Right, Inc., supra*, 6 Cal.4th at page 1185, expressly embraces the proposition that false statements cannot serve as a predicate for tort damages otherwise unavailable under *Foley*. Here, all Sheppard's claims arise from the termination, which he alleges was caused by a conspiracy of false reporting by coemployees. There is no suggestion in the record of any violation of public policy under *Foley*. To the contrary, the employee evaluation and reporting system which led to Sheppard's termination from Southwest would appear to advance both corporate and public interests in safety. (49 U.S.C. § 44701(d).) Allowing coworkers to suffer liability would be anomalous under such circumstances.

The doctrine of respondeat superior also illustrates the inappropriateness of imposing liability on coworkers who participate in personnel actions, rather than on the employer. We start with the premise that personnel actions are a sine qua non of any business operation: "In order to properly manage its business, every employer must on occasion review, criticize, demote, transfer and discipline employees . . . [yet e]mployees may consider any such adverse action to be improper and outrageous." (*Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 160 [233 Cal.Rptr. 308, 729 P.2d 743].) With this in mind, it is axiomatic that respondeat superior allocates risks based on policy, rather than on fault, and arises from " ' "a deeply rooted sentiment" ' " that it would be "unjust for an enterprise to disclaim responsibility for injuries occurring in the course of its characteristic activities." (*Mary M.* v. *City of Los Angeles* (1991) 54 Cal.3d 202, 208 [285 Cal.Rptr. 99, 814 P.2d 1341].) Indeed, the California Supreme Court has repeatedly emphasized the central justification for respondeat superior liability: " 'losses fairly attributable to an enterprise—those which foreseeably result from the conduct of the enterprise—should be allocated to the enterprise as a cost of doing business.' " (*Lisa M.* v. *Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 299 [48 Cal.Rptr.2d 510, 907 P.2d 358], quoting *Farmers Ins. Group* v. *County of Santa Clara* (1995) 11 Cal.4th 992, 1004 [47 Cal.Rptr.2d 478, 906 P.2d 440].)

Based on a similar rationale, the Supreme Court recently held that individual supervisory employees cannot be personally liable under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) or for discharge in violation of public policy for discrimination relating to personnel management decisions. (*Reno* v. *Baird* (1998) 18 Cal.4th 640 [76

Cal.Rptr.2d 499, 957 P.2d 1333].)[6] There, the court stated: "We do not decide merely whether individuals should be held liable for their wrongdoing, but whether all supervisors should be subjected to the ever-present threat of a lawsuit each time they make a personnel decision. Litigation is expensive for the innocent as well as the wrongdoer." (18 Cal.4th at p. 663.) It concluded that in limiting the threat of lawsuit to the employer, a balance was being struck "between the goals of eliminating discrimination in the workplace and minimizing the debilitating burden of litigation on individuals." (*Ibid.*)

■ Such a balance must also be achieved in the employment arena outside the context of FEHA, and for all employees, whether or not they are supervisors. Personnel actions are made for the benefit of the enterprise—the employer, and it is the employer, not the individual employees, that must bear the risks and responsibilities attendant to these actions. Naturally, personnel actions are made with the input of employees, both as part of their official duties and otherwise. Without such input, the employer would be making decisions and taking action in a vacuum, and indeed, effective management and operation of an enterprise to a significant extent depends upon the free exchange of information, concerns, and ideas of all employees. This can hardly occur when the individual employees face the prospect of being sued for this conduct.

Some of the information exchanged will be incorrect, even maliciously so. Thus, it will behoove the employer to be thorough in its investigation and analysis relating to personnel actions, not only to avoid civil liability (see *Cotran v. Rollins Hudig Hall Internat., Inc.* (1998) 17 Cal.4th 93, 107 [69 Cal.Rptr.2d 900, 948 P.2d 412] [employer must conduct good faith investigation regarding basis for discharging employee]) and costly grievance procedures, but to retain and reward good employees and to root out those who are dishonest or who act with ulterior motives which undermine the effective operation of the company.

This does not guarantee that some cases will not "fall through the cracks." Some employees will be discharged or demoted based on incorrect or false information from other employees that is not discovered by the employer

---

[6]The court distinguished harassment under FEHA from discrimination in business or personnel management decisions. (18 Cal.4th at pp. 645-646.) We note that a cause of action for sexual harassment is governed by statute (see Gov. Code, § 12940) and we do not purport to limit it. Indeed, contrary to the dissent's suggestion, this opinion does not create "a sweeping new immunity"; what it does, is properly limit the "piling on" of boundless nonstatutory tort claims.

through a good faith investigation, or revealed through grievance procedures.[7] However, this risk is outweighed by the vital need for all employees to have the freedom to act and exchange information relating to personnel actions without fear and risk of being sued. As the Supreme Court reiterated in *Reno*, quoting Judge Learned Hand: " ' "It does indeed go without saying that an official [or here, an employee], who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials [or all employees], the innocent as well as the guilty, to the burden of trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties . . . ." ' " (*Reno* v. *Baird, supra*, 18 Cal.4th at p. 652, quoting *Gregoire* v. *Biddle* (2d Cir. 1949) 177 F.2d 579, 581.)

The interest in allowing all employees the freedom to act and speak in relation to personnel actions without the threat of debilitating litigation outweighs the risk that a few employees will act maliciously and go undetected by their employers. Accordingly, we hold that an employee or former employee cannot sue individual employees based on their conduct, including acts or words, relating to personnel actions.

### *"Scope of Employment"*

Here, Sheppard alleged in boilerplate language in his verified complaint that all the defendants were agents and employees of each other and acting within the scope of their employment. Later, he sought to amend his complaint to allege that the defendants were acting outside their scope of employment. The court denied this motion, and granted summary judgment, ruling that Sheppard had failed to create a triable issue as to whether Hardiman, Freeman and Godfrey were acting outside the scope of their employment. Sheppard contends this ruling was error and that the court also erred in denying his motion to amend.

These contentions are moot, however, because our holding does not depend on whether an employee is determined to have been acting within his scope of employment while engaged in conduct relating to a personnel

---

[7] Of course nothing prevents an employer from taking action against an employee if it subsequently discovers that he or she has lied or otherwise furnished misinformation or acted dishonestly.

action. Although the "scope of employment" limitation may have facial appeal, this test undermines the purpose and balance struck in insulating employees from personal liability in order to allow, and indeed, encourage, employees to act and speak in relation to personnel actions. Otherwise, whether someone was acting within his or her scope of employment will simply become one of the issues battled over in the lawsuit, and all employees who dare to act or speak in this regard will be subjected to the risks of costly, burdensome litigation, the outcome of which may not be determined for years.

Moreover, all employees, regardless of their job descriptions, responsibilities or "scope" should be permitted to speak or act freely in relation to personnel actions. If any employee learns of wrongdoing, misconduct, or incompetence by another employee, he or she should be able to inform the employer or otherwise act without having to worry if doing so falls within his or her "scope of employment" and whether he or she will be sued.

The difficulty with the scope of employment limitation is illustrated by the circumstances of this case. Godfrey, Freeman and Hardiman do not stand on equal footing in terms of "scope of employment." Godfrey was a check airman who administered one of Sheppard's flight tests. Thus, it would appear that he was acting within the scope of his employment in evaluating Sheppard. Freeman was the chief pilot for Southwest's Chicago base, but was not among Sheppard's superiors or flying partners. Thus, it is unclear whether, or under what circumstances, Freeman could be found to be acting within the scope of his employment. Hardiman, a flight attendant, had no responsibility for evaluating Sheppard; thus, it would seem that she was not acting within the scope of her employment. However, flight attendants should not be discouraged from acting upon, reporting or otherwise exchanging information regarding a pilot simply because doing so is not within their job description and thus, they risk being sued. The same is true of employees in other industries. The freedom to act and speak in relation to personnel actions should not turn on whether doing so is determined, years later, to be within an employee's "scope of employment."

*Libel*

Sections 43 through 48.5 of the Civil Code provide a scheme governing recovery for and defenses to defamation, and Sheppard's allegations pertaining to his claim for libel are patterned after the libel and defamation statutes set forth therein. (See Civ. Code, §§ 45, 46.) However, as additional grounds for sustaining the demurrers in favor of Tree and Jones, the court ruled that Sheppard failed to allege that these two defendants published libelous statements as required under Civil Code section 45.

Similarly, as additional grounds for granting summary judgment in favor of Hardiman, Freeman and Godfrey, the court ruled that Sheppard had failed to show that anyone except Godfrey had published libelous statements, and had failed to show that any publication was not privileged. (See Civ. Code, §§ 45, 47.)

Sheppard points out that he alleged that all defendants acted in concert and engaged in a conspiracy to defame him, and further argues that there is an issue of fact as to whether the publications were made with malice and thus were not privileged under Civil Code section 47. We note that liability for libel may be imposed on a conspiracy theory. (See *Wilcox* v. *Superior Court* (1994) 27 Cal.App.4th 809, 827-828 [33 Cal.Rptr.2d 446]; see also *Osmond* v. *EWAP, Inc.* (1984) 153 Cal.App.3d 842, 852 [200 Cal.Rptr. 674] [general rule is that ". . . everyone who takes a *responsible* part in the publication is liable for the defamation" (italics in original)].) Thus, we must reverse the demurrers sustained in favor of Tree and Jones on the cause of action for libel. Likewise, we must reverse the summary judgments entered in favor of the remaining defendants on this cause of action and remand the matter for the court to determine whether an issue of fact exists as to whether any of the defendants acted with malice. (See Civ. Code, § 47, subd. (c).)

## CONCLUSION

Employees must be allowed to act and speak freely in relation to personnel actions without fear and risk of being sued for doing so. It is the employer that ultimately benefits from, and thus, must bear the risks attendant to, the free exchange of information. Accordingly, we hold that employees, regardless of their scope of employment or personal motives, cannot be individually liable for their acts or words relating to personnel actions unless such liability arises from statute. Thus, we uphold the trial court's granting of summary judgment and sustaining the demurrers without leave to amend as to all tort causes of action against Freeman, Hardiman, Godfrey, Tree and Jones except libel.

## DISPOSITION

The judgment is reversed and remanded as it pertains to the cause of action for libel; it is affirmed in all other respects. The parties are to bear their own costs on appeal.

Nares, J., concurred.

**KREMER, P. J.**—I concur in part and dissent in part.

## I

I concur in the majority opinion's result with respect to its effective affirmance of the superior court's denial of appellant Christopher G. Sheppard's motion for leave to amend his complaint to allege that defendants were acting outside the course and scope of their employment. Since Sheppard's proposed amendment sought to contradict the express allegations of his original complaint on an important substantive matter and was untimely as presented shortly before trial, the court acted within its discretion in denying Sheppard's request to amend.

## II

I dissent from the portion of the majority opinion reversing the summary judgment favoring defendants Lou Freeman, Roni Hardiman and Alan Godfrey on Sheppard's cause of action for libel. In granting summary judgment as to libel, the superior court properly concluded Sheppard failed to present evidence raising any triable factual issue that defendants' conduct was not immunized by the managerial privilege. The court also properly concluded Sheppard failed to present evidence raising a triable factual issue that any defendant except Godfrey published anything or that any publication was not privileged. The court's references to those privileges effectively amounted to a determination that Sheppard failed to present any evidence sufficient to support a finding that Freeman, Hardiman or Godfrey acted with malice.

This evidentiary record supported the superior court's determination. In his declaration opposing the summary judgment motions, Sheppard stated he was a pilot/first officer for Southwest Airlines; Southwest had a policy requiring termination of the employment of any pilot not successfully completing the program for upgrade from first officer to captain; the final phase of the captain upgrade program was a flight test called the "Initial Operating Experience" (IOE); defendant Godfrey was a captain and "check airman" who administered Sheppard's final IOE; and the reason given for Sheppard's employment termination was his failing the IOE. In essence, Sheppard's complaint and declaration acknowledged that Godfrey in the course and scope of his employment engaged in the " 'commonly necessary personnel management action' " of evaluating Sheppard's job performance. (Cf. *Reno v. Baird* (1998) 18 Cal.4th 640 [76 Cal.Rptr.2d 499, 957 P.2d 1333].) Since for purposes of evaluating Sheppard's performance Godfrey was acting in a managerial or supervisorial capacity, his actions, if not malicious, came within the managerial privilege (see, e.g., *Aalgaard v. Merchants Nat. Bank, Inc.* (1990) 224 Cal.App.3d 674, 684-686 [274 Cal.Rptr. 81]) or the conditional statutory privilege of Civil Code section 47, subdivision (c). In

seeking summary judgment, defendants Freeman, Hardiman and Godfrey submitted their declarations as well as those of defendants Jon Tree and Rod Jones, all denying any wrongful activity or intent with respect to Sheppard's performance evaluation. Although Sheppard's opposing declaration asserted Godfrey's written report of Sheppard's performance was "false in all material respects," Sheppard did not submit any evidence that Godfrey acted with malice in presenting such report. The record also contained no evidence connecting Freeman or Hardiman to publication of such report or any other defamatory statement, whether maliciously or otherwise.[1] On this evidentiary record the superior court properly granted summary judgment favoring Freeman, Hardiman and Godfrey on Sheppard's cause of action for libel. Hence, I would affirm the summary judgment as to libel.

## III

I concur in the majority opinion's result with respect to affirming the summary judgment favoring defendants Freeman, Hardiman and Godfrey on Sheppard's causes of action for interference with contract, interference with prospective economic advantage, and intentional emotional distress. Such claims as alleged were based upon Sheppard's libel cause of action. Given the evidentiary record compelling summary judgment favoring those defendants as to libel, summary judgment was also proper on Sheppard's derivative ancillary claims.

## IV

I concur in the section of the majority opinion reversing the portion of the judgment dismissing Sheppard's cause of action for libel against defendants Tree and Jones. As the majority observe, Sheppard's complaint adequately pleaded facts sufficient to state such cause of action and thus survive demurrer. (*Wilcox* v. *Superior Court* (1994) 27 Cal.App.4th 809, 827-828 [33 Cal.Rptr.2d 446]; *Osmond* v. *EWAP, Inc.* (1984) 153 Cal.App.3d 842, 852 [200 Cal.Rptr. 674]; see also *Davaris* v. *Cubaleski* (1993) 12 Cal.App.4th 1583, 1587-1588 [16 Cal.Rptr.2d 330].)[2] However, I dissent from the section of the majority opinion affirming the portion of the judgment dismissing Sheppard's causes of action against Tree and Jones for interference with

---

[1]Although Sheppard's declaration asserted he believed Hardiman harbored ill will toward him based upon an argument apparently related to her alleged affair with Freeman, any such ill will unconnected to a false publication proved nothing. (Cf. *Live Oak Publishing Co.* v. *Cohagan* (1991) 234 Cal.App.3d 1277, 1291-1292 [286 Cal.Rptr. 198].)

[2]In *Davaris* v. *Cubaleski, supra,* 12 Cal.App.4th 1583, the appellate court concluded the plaintiff employee's pleaded defamation claim against a defendant executive employee was sufficient to overcome a demurrer based upon workers' compensation exclusivity. (*Id.* at pp. 1590-1592.)

contract, interference with prospective economic advantage, and intentional infliction of emotional distress. Those claims as alleged were essentially derivative of Sheppard's properly pleaded cause of action for libel and otherwise sufficient to overcome demurrer. For purposes of demurrer, the majority have not identified any sound analytical basis to treat such ancillary claims differently than Sheppard's libel claim. Hence, I would reverse the entire portion of the judgment favoring Tree and Jones.

It is here that the majority depart into an attempt to decide this case not on its specific record but instead by creating a sweeping new immunity relieving all defendant coemployees from liability for virtually all damages caused to a plaintiff employee or former employee—whether lost economic benefits, emotional distress, property damage or otherwise—by the defendant coemployees' malicious intentional acts "relating to personnel actions" regardless whether committed within or outside the course and scope of employment. (Maj. opn., *ante*, at pp. 342, 343, 347, 349.) The majority then carve out exceptions for the statutorily established torts of defamation and harassment plus "torts involving physical injury." (Maj. opn, *ante*, at pp. 342, 343, 345, fn. 6, 348-349.) However, the rule adopted by the majority is unnecessary, contrary to settled law and sound policy, and ultimately unworkable. Indeed, in the common situation presented here where a plaintiff's lawsuit consists of libel and derivative claims, the majority's rule is rendered hollow by its exceptions and accomplishes little. The manifest practical and analytical problems engendered by the majority's approach demonstrate that creation of such broad extended immunity is a task more properly left to the Legislature.

A

The rule adopted by the majority is unnecessary since, as explained, this case can be decided entirely on the record under settled law. The majority's rule is also unnecessary because the Legislature has already spoken on the issue of coemployee immunity for torts against a fellow employee.

The majority recognize the existence of the legislative scheme bearing on the legislatively declared personal right of protection from defamation (Civ. Code, § 43 et seq.). That legislative scheme both establishes the elements of actionable defamation and provides privileges from liability. Although the majority express concern that "all employees who dare to act or speak" in relation to personnel actions "will be subjected to the risks of costly, burdensome litigation, the outcome of which may not be determined for years" (maj. opn., *ante*, at p. 347), the Legislature has already immunized from liability those coemployees who act or speak *without malice* in relation

to personnel actions. The possibility that nonmalicious coemployees may become embroiled in lengthy litigation before ultimately prevailing does not warrant granting blanket immunity to tortfeasors who maliciously cause plaintiff-victims to lose their economic livelihood. The law provides other remedies for meritless lawsuits short of blanket immunity to malicious tortfeasors. Further, the Legislature can enact additional such remedies.

## B

In immunizing defendant coemployees from liability for intentionally inflicting emotional distress on a plaintiff employee based upon acts relating to personnel actions regardless whether the defendant coemployees were acting within or outside the scope of their employment, the majority appear to ignore the underpinnings of well-established case law involving employee suits against employers and supervisorial coemployees. In *Shoemaker* v. *Myers* (1990) 52 Cal.3d 1 [276 Cal.Rptr. 303, 801 P.2d 1054, 20 A.L.R.5th 1016] (*Shoemaker*), the Supreme Court noted "that injuries arising from termination of employment ordinarily arise out of and occur in the course of employment" and thus are generally subject to the exclusive remedy provisions of the Workers' Compensation Act. (*Id.* at pp. 19-20.) However, concluding such exclusivity provisions did not bar all causes of action "arising from a discharge," the Supreme Court stated: "Where the injury is a result of conduct, whether in the form of discharge or otherwise, not seen as reasonably coming within the compensation bargain, a separate civil action may lie." (*Id.* at p. 20.) Recently, the Supreme Court indicated that harassment was outside the scope of the compensation bargain. (*Reno* v. *Baird, supra,* 18 Cal.4th at pp. 645-647.) Characterizing harassment as consisting of "actions *outside the scope of job duties* which are not of a type necessary to business and personnel management," the Supreme Court stated: "Harassment claims are based on a type of conduct that is avoidable and unnecessary to job performance." (*Id.* at pp. 646-647, italics added.) In *Fisher* v. *San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590 [262 Cal.Rptr. 842] (*Fisher*), the appellate court held that "by its very nature, sexual harassment in the work place is outrageous conduct as it exceeds all bounds of decency usually tolerated by a decent society. [¶] Accordingly, if properly pled, sexual harassment will constitute the outrageous behavior element of a cause of action for intentional infliction of emotional distress against" a managerial coemployee. (*Id.* at p. 618.)

Sheppard's cause of action for intentional infliction of emotional distress against coemployees Tree and Jones was based primarily upon alleged malicious intentional acts including defamation. Certainly the alleged maliciously defamatory publication by Tree and Jones contravening the legislatively established statutory scheme against libel implicated considerations of

substantial public policy and involved interests, beyond those of employer and employee, equivalent to the policy interests implicated by harassment. Hence, the alleged defamation would satisfy the outrageous behavior element of Sheppard's cause of action for intentional infliction of emotional distress. (Cf. *Fisher, supra,* 214 Cal.App.3d at p. 618.) Indeed, those malicious intentional acts allegedly committed by coemployees Tree and Jones would be actionable under such tort theory precisely because their conduct was *outside* the scope of the employment bargain. (Cf. *Reno* v. *Baird, supra,* 18 Cal.4th at pp. 645-647; *Shoemaker, supra,* 52 Cal.3d at pp. 19-20.)

Moreover, for purposes of pleading interference with contract and interference with prospective economic advantage, the alleged defamatory acts of Tree and Jones violating statutory proscriptions satisfied the requirement there be conduct qualifying as wrongful " 'beyond the fact of the interference itself.' " (*Della Penna* v. *Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 393 [45 Cal.Rptr.2d 436, 902 P.2d 740]; *LiMandri* v. *Judkins* (1997) 52 Cal.App.4th 326, 340-341 [60 Cal.Rptr.2d 539].)

## C

The majority attempt to temper their sweeping new immunity by stating it is not intended "to limit coemployee liability for torts involving physical injury." (Maj. opn., *ante,* at p. 343, fn. 4.) However, the majority's need to create such undefined exception to their rule of coemployee nonliability for intentional malicious torts reflects the lack of analytical underpinning for the broad immunity established by the majority.

In his cause of action for intentional infliction of emotional distress, Sheppard pleaded he suffered "embarrassment, fear, worry, anxiety, loss of sleep, and related physical and emotional symptoms" and sought damages for those alleged "physical and emotional distress claims." Although the superior court sustained the demurrers of Trees and Jones to such cause of action on the ground Sheppard's sole and exclusive remedy was under the Workers' Compensation Act, the majority fail to discuss the potentially dispositive narrower issue of workers' compensation exclusivity. Further, in adopting their exception for a coemployee's malicious intentional torts involving "physical injury," the majority create additional analytical confusion by choosing a term of art ("physical injury") no longer considered to be conceptually distinct from "emotional injury" for purposes of workers' compensation exclusivity jurisprudence. (*Livitsanos* v. *Superior Court* (1992) 2 Cal.4th 744, 750-754 [7 Cal.Rptr.2d 808, 828 P.2d 1195]; *Davaris* v. *Cubaleski, supra,* 12 Cal.App.4th at pp. 1588-1589; *Horn* v. *Bradco Internat., Ltd.* (1991) 232 Cal.App.3d 653, 665-670 [283 Cal.Rptr. 721]; *Hart* v.

*National Mortgage & Land Co.* (1987) 189 Cal.App.3d 1420, 1428-1429 [235 Cal.Rptr. 68].) Indeed, in *Horn* v. *Bradco Internat., Ltd., supra,* 232 Cal.App.3d 653, the appellate court specifically noted that for purposes of application of the exclusivity rule the focus should be not upon "the nature of the *injury* suffered" by the plaintiff but instead upon the "more logically related" inquiry whether the defendant's "actionable *misconduct*" was "a normal incident of the employment relationship." (*Id.* at p. 669, italics in original.)

Moreover, although not defining the term "physical injury," the majority's exception for "torts involving physical injury" apparently reflects the majority's acknowledgment that as a factual matter tortious conduct involving physical injury to the person may relate directly to a personnel action. For example, an employer may actively encourage or tacitly approve of coemployees' malicious harassment (including battery) of a plaintiff employee as part of an ongoing scheme to culminate in termination of the plaintiff's employment. To deal with such situations the majority, without explanation, create an exception for "torts involving physical injury" to the opinion's rule of nonliability for intentional malicious acts "relating to personnel actions." Two observations are pertinent. First, if the majority's rule of nonliability as a matter of law is a product of legal analysis, one would expect the opinion to set forth the jurisprudential principles for the exception. However, the opinion essays none. The apparent reason is that the exception is a pure policy statement as is the rule of nonliability itself. Such policy-based rules are more properly within the province of the Legislature.

Second, the exception the majority create does not go far enough. Under certain circumstances, intentional destruction of property may also constitute conduct "relating to personnel actions." For instance, as part of a scheme to manufacture the discharge of a plaintiff employee for incompetence/inability to do the job, a defendant coemployee might maliciously sabotage the plaintiff's work product by tampering with or destroying equipment owned and used by the plaintiff in performing the job. Certainly the saboteur should be subject to a lawsuit for such property damage. However, the expanded immunity recognized by the majority would appear to bar such lawsuit because the property damage was factually related to the personnel action of employment termination, presumably did not constitute "physical injury," and was civilly remediable under a cause of action arising under the historical common law tort action of trover/conversion rather than under statute. (See 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 610 et seq., p. 707 et seq.; 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 660, p. 116.)

## D

In discussing cases from other jurisdictions, the majority allude to "the need to contain burgeoning liability theories in this arena." (Maj. opn., *ante,*

at p. 344, fn. 5.) The majority also refer to unspecified "deleterious effects on business if disciplined employees may avoid *Foley's* [*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373]] bar by simply alleging malice and suing coemployees for damages on alternative tort theories, when the identical personnel action cannot give rise to tort damages against the employer." (Maj. opn., *ante*, at p. 344.) However, contrary to the majority's characterization, Sheppard's lawsuit did not challenge a "personnel action" but instead simply alleged Sheppard's coemployees maliciously committed various intentional torts causing him damage including his discharge.[3] Further, recent cases indicate the Supreme Court is continuing its move toward narrowing liability theories in employment law, primarily by incremental measured steps rather than by creating sweeping new immunities. (See, e.g., *Reno* v. *Baird, supra,* 18 Cal.4th 640; *Cotran* v. *Rollins Hudig Hall Internat., Inc.* (1998) 17 Cal.4th 93 [69 Cal.Rptr.2d 900, 948 P.2d 412] (*Cotran*).)

In the employment termination case of *Cotran, supra,* 17 Cal.4th 93, the Supreme Court essentially limited judicial/jury review of the legitimacy of an employer's decision to discharge an employee to whether the employer acted in good faith and on reasonable grounds—not whether the employee's misconduct/poor job performance occurred as a matter of fact. (*Id.* at pp. 95, 100-101, 109.) Stated otherwise, the Supreme Court defined the role of the finder of fact as "to assess the *objective reasonableness* of the employer's factual determination of misconduct." (*Id.* at p. 103, italics in original.) In support of its holding, the Supreme Court recognized the employer's interest in operating the business efficiently and profitably; the need for courts not to interfere with the employer's legitimate exercise of managerial discretion; and the goal of freeing the employer from the threat of a jury second-guessing its business judgment. (*Id.* at pp. 101, 106.) However, the policies supporting narrowing the scope of judicial/jury review of an employer's termination decision do not support blanket immunity for coemployees' intentional malicious actions toward a plaintiff employee or former employee "relating to personnel actions." On the contrary, in *Cotran, supra,* 17 Cal.4th 93, the Supreme Court characterized the "axiom underlying the jurisprudence of wrongful termination" as "the need for a sensible latitude for managerial decisionmaking and its corollary, an optimum balance point

---

[3] Also contrary to the majority's characterization (maj. opn., *ante*, at p. 344), *Jensen* v. *Hewlett-Packard Co.* (1993) 14 Cal.App.4th 958 [18 Cal.Rptr.2d 83], does not hold that an action in contract is the sole remedy against an employer for alleged falsified performance reviews. Instead, the appellate court expressly acknowledged that a tort action for libel was permissible under some circumstances: "Based on the facts here, we hold that unless an employer's performance evaluation falsely accuses an employee of criminal conduct, lack of integrity, dishonesty, *incompetence* or reprehensible personal characteristics or behavior [citation], it cannot support a cause of action for libel." (*Id.* at p. 965, italics added.)

between the employer's interest in organizational efficiency and the employee's interest in continuing employment." (*Id.* at p. 106.) Certainly such balancing axiom does not countenance virtually every "nonstatutory" intentional malicious tort committed by a coemployee simply because of its "relation to personnel actions."

Further, although recognizing that blanket coemployee immunity may leave some damaged employees without a direct remedy, the majority conclude such concern is mitigated by the investigative requirement imposed on the employer under *Cotran, supra,* 17 Cal.4th 93. (Maj. opn., *ante,* p. 346.) However, as discussed, the essence of *Cotran* was to circumscribe the scope of judicial/jury review of an employer's decision to discharge an employee. (*Cotran, supra,* 17 Cal.4th at pp. 107-108.) In that vein, the investigation required under *Cotran* was not necessarily so extensive as to discover and remedy the coemployees' plot alleged by Sheppard. Instead, *Cotran* simply held that once it meets its limited investigative burden an employer will not be liable for wrongful termination even though the information from coemployees forming the basis for such decision was maliciously false. In sum, nothing in *Cotran* supports blanket immunity for the malicious intentional torts of coemployees.

Finally, as noted by the majority (maj. opn., *ante,* pp. 345-346), the Supreme Court in *Reno* v. *Baird, supra,* 18 Cal.4th 640, interpreted the Fair Employment and Housing Act as not imposing personal liability on supervisory employees for employment discrimination or attendant wrongful discharge based on discrimination. Instead, the Supreme Court held liability for discrimination in personnel management decisions was limited to employers. However, as discussed, the Supreme Court also expressly distinguished discrimination from harassment: "Making a personnel decision is conduct of a type fundamentally different from the type of conduct that constitutes harassment." (*Id.* at p. 646.) Prudence mandates caution in relying on *Reno* v. *Baird,* since that case was based primarily upon interpretation of a statute not at issue here. Nonetheless, instead of supporting the majority's grant of blanket immunity to coemployees for malicious intentional acts "relating to personnel actions," the analysis in *Reno* suggests the contrary. The alleged wrongful acts of defendant coemployees here were more analogous to harassment than to legitimate personnel management. Specifically, the alleged plot to cause Sheppard's discharge did not involve " 'conduct of a type necessary for management' " of Southwest's business but instead consisted of " 'conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives.' " (*Ibid.*)

E

In sum, Sheppard's lawsuit did not challenge a "personnel action" but instead alleged that Sheppard's coemployees maliciously committed various intentional torts founded upon defamation and resulting in damage to Sheppard, including his discharge. The majority conclude that the "interest in allowing all employees the freedom to act and speak in relation to personnel actions without the threat of debilitating litigation outweighs the risk that a few employees will act maliciously and go undetected by their employers." (Maj. opn., *ante*, at p. 347.) The majority also refer to "the purpose and balance struck in insulating employees from personal liability in order to allow, and indeed, encourage, employees to act and speak in relation to personnel actions." (*Ibid.*) However, the Legislature has already struck the balance by granting immunity to all coemployees who act and speak *without malice* in relation to personnel actions. (Civ. Code, § 47, subd. (c).) If another balance is to be struck to create blanket immunity regardless of malice, the Legislature, not this court, should do the striking.

A petition for a rehearing was denied November 12, 1998, and the petitions of both appellant and respondents for review by the Supreme Court were denied February 3, 1999. Kennard, J., and Brown, J., were of the opinion that the petitions should be granted.