Filed 2/29/16  Chu v. Martin CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LI CHING CHU et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>JEFF MARTIN et al.,<br><br>    Defendants and Respondents. | A145317<br><br>(San Mateo County<br>Super. Ct. No. CIV508888) |

Cindy K. Hung (Cindy) was found dead at her workplace on October 21, 2010.[1] Her death was initially ruled a suicide by the coroner.  Cindy's parents, appellants Li Ching Chu and Robert Ching Liang Hung (Plaintiffs), are convinced that their daughter was murdered and the true cause of her death has been covered up by an ongoing conspiracy by her coworkers and others.  Plaintiffs have attempted, largely without success, to pursue claims against various coworkers they contend were complicit in Cindy's death.  This case has been before us on several prior occasions.  (*Chu v. Naik* (May 26, 2015, A142837) [nonpub. opn.]; *Chu v. Tribal Brands, Inc.* (Mar. 12, 2015, A141730) [nonpub. opn.]; *Chu v. Tribal Technologies, Inc.* (Mar. 6, 2015, A143749) [order dismissing appeal]; *Chu v. Glenborough 400 ECR, LLC* (Apr. 9, 2014, A139167)

---

[1] We refer to the decedent by her first name, consistent with appellants' briefing. We intend no disrespect.

1

[nonpub. opn.]; *Hung v. Superior Court* (July 22, 2013, A139224) [order denying writ petition].)[2]

The trial court previously sustained demurrers to Plaintiffs' amended complaint without leave to amend as to nearly all individual defendants, and we have affirmed. (*Chu v. Naik, supra,* A142837; *Chu v. Tribal Brands, Inc., supra,* A141730.)  At issue here are demurrers sustained by the trial court without leave to amend as to individual defendants Jeff Martin, Susan Pfendt, Sohail Suleman, Sheryl Friesz and Michael Hales (collectively Respondents).[3]  We again affirm.

## I.    BACKGROUND

Plaintiffs' claims arise from Cindy's death at her workplace in October 2010. Cindy's body was found on the rooftop of a breezeway in the office building where she worked for Tribal Technologies.  Her death was initially deemed a suicide.[4]  Plaintiffs allege that Tribal Technologies employees Joseph Vierra and Victoria Dinovich murdered Cindy with the assistance of Doe defendants and all defendants covered up the crime.

Martin, Pfendt, Suleman and Hales, among others, were named as Doe defendants in a July 9, 2012 amendment to Plaintiffs' first amended complaint; Friesz and others

---

[2] Our prior opinions are law of the case on the issues decided therein and are citable for that purpose.  (See *San Francisco Forty-Niners v. Nishioka* (1999) 75 Cal.App.4th 637, 645–646 & fn. 7; Cal. Rules of Court, rule 8.1115(b)(1).)

[3] Plaintiffs assert in their opening brief that Respondents are employed by corporate defendant Tribal Technologies:  Martin, the chief executive officer; Suleman, a vice president; Pfendt, a human resources manager; Friesz, a human resources employee; and Hales, an engineer.

[4] The initial death certificate listed the manner of death as suicide, resulting from a "[j]ump from great height to second story roof top."  The death certificate was later amended to change manner of death to "pending investigation" and the circumstances as "unwitnessed jump or fall from great height to second story roof top."  The certificate was again amended to list the circumstances of death as "accident," again "pending investigation."  Nothing in the record reveals a final determination.

2

were named as a Doe defendants in a further amendment filed on July 19, 2012.[5] Respondents demurred to the first amended complaint, and the demurrers were sustained with leave to amend. A second amended complaint for damages was filed on December 4, 2012. A third amended complaint was filed on December 14, 2012. Respondents again demurred. The court sustained the demurrers in part, and gave Plaintiffs a further opportunity to amend. A fourth amended complaint was filed on July 16, 2013, asserting causes of action for assault, battery, intentional infliction of emotional distress, negligence, negligent supervision and retention, and wrongful death. Respondents were named in the third cause of action for intentional infliction of emotional distress and the fourth cause of action for negligence. Martin and Pfendt were also named in a fifth cause of action for negligent supervision and retention. Respondents again demurred. On October 2, 2014, the court again sustained the demurrers in part with leave to amend. The court also granted a motion to strike the fifth cause of action without leave to amend on the basis that Martin and Pfendt's demurrer to this cause of action had already been sustained without leave to amend on June 26, 2013.

The operative trial court pleading was Plaintiffs' fifth amended complaint, filed on October 31, 2014. Plaintiffs' remaining causes of action against Respondents were claims for intentional infliction of emotional distress (the third cause of action) and negligence (the fourth cause of action). Plaintiffs again pleaded a fifth cause of action for negligent supervision against "Does 1-50." Respondents jointly demurred and moved to strike.

After hearing on January 8, 2015, the court sustained Respondents' demurrer without leave to amend. A judgment of dismissal was filed on April 6, 2015. Plaintiffs filed a timely notice of appeal from the judgment and argue the trial court erred in sustaining Respondents' demurrer without leave to amend.

---

[5] Martin was named as Doe #3, Pfendt as Doe #4, Hales as Doe #5, Suleman as Doe #6, and Friesz as Doe #8.

## II.    DISCUSSION

We review an order sustaining a demurrer de novo, exercising our independent judgment as to whether, as a matter of law, the complaint states a cause of action on any available legal theory.  (See *Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501.)  In doing so, we assume the truth of all material factual allegations together with those matters subject to judicial notice.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  We do not, however, assume the truth of contentions, deductions or conclusions of fact or law.  (*Interinsurance Exchange v. Narula* (1995) 33 Cal.App.4th 1140, 1143.)  If the demurrer was sustained without leave to amend, "we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment."  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)  If we find that an amendment could cure the defect, we will conclude that the trial court abused its discretion and reverse.  Plaintiffs have the burden of proving that an amendment would cure the defect.  (*Ibid.*)

A.    *Intentional Infliction of Emotional Distress*

Plaintiffs do not provide a captioned section in their opening brief that discusses the requisite elements of a claim for intentional infliction of emotional distress, nor do they present any argument or analysis as to why they believe the necessary elements were pleaded in the third cause of action of the fifth amended complaint.  The only heading in Plaintiffs' brief that mentions emotional distress is captioned:  "Defendants Are Liable for Intentional/Negligent Infliction of Mental Suffering Because They Failed to Prevent Cindy's murder, Left Cindy to Die in the Breezeway of the Building and Subsequently Participated In Covering-Up the Murder."  After asserting (erroneously, and without any citation to the record)[6] that the trial court sustained Respondents' demurrer on the ground "that covering up a murder is not outrageous conduct," Plaintiffs discuss only the tort of *negligent* infliction of emotional distress under this heading and cite case authority dealing with that tort.  They fail to articulate why this authority is applicable to a claim of

---

[6] The statement of facts in Plaintiffs' opening brief does not contain a single citation to the record.

4

intentional infliction of emotional distress.  The case they argue is "most relevant to the facts at hand" is *Burgess v. Superior Court* (1992) 2 Cal.4th 1064 (*Burgess*).  *Burgess* discussed the distinction between "bystander" and "direct victim" cases regarding liability for negligent infliction of emotional distress.  In a bystander case, " '[i]n the absence of physical injury or impact to the plaintiff himself, damages for emotional distress should be recoverable only if the plaintiff:  (1) is closely related to the injury victim, (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim, and (3) as a result suffers emotional distress beyond that which would be anticipated in a disinterested witness.' " (*Id.* at p. 1073, fn. omitted.)  Bystander liability is premised upon a defendant's violation of a duty not to negligently cause emotional distress to people who observe conduct which causes harm to another.  (*Ibid.*)  Plaintiffs have never alleged in any iteration of their pleadings that they were present at the scene when Cindy's injury occurred.

In a direct victim case, "a cause of action to recover damages for negligently inflicted emotional distress will lie, notwithstanding the criteria imposed upon recovery by bystanders, . . . where *a duty arising from a preexisting relationship* is negligently breached." (*Burgess, supra,* 2 Cal.4th at p. 1074, italics added.)  Plaintiffs did not plead the existence of any preexisting relationship that would impose a duty of care to Plaintiffs on Respondents beyond that owed to the public in general.[7]

Plaintiffs' only discussion of the tort of intentional infliction of emotional distress is buried under a different heading addressing liability of Respondents for "Negligent Supervision and Retention."  California Rules of Court, rule 8.204(a)(1)(B) requires an appellant to state each point under a separate heading or subheading summarizing the point and supporting each point by argument.  "The purpose of requiring headings and

---

[7] In *Chu v. Naik, supra,* A142837, we found that Plaintiffs' identical claims for negligent infliction of emotional distress as to other defendants failed because Plaintiffs alleged no preexisting relationship with those defendants that would give rise to a duty of care.  Because the defendants' preexisting relationship was with Cindy, not Cindy's parents, Plaintiffs' claim necessarily failed.  The same is true here.

coherent arguments in appellate briefs is 'to lighten the labors of the appellate [courts] by requiring the litigants to present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass.' " (*Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830–1831, fn. 4.) Despite ample opportunities to develop at least a passing familiarity with the rules of appellate practice, Plaintiffs apparently chose to ignore this requirement. "[W]e do not consider all of the loose and disparate arguments that are not clearly set out in a heading and supported by reasoned legal argument." (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1294; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) Arguments not properly presented may be treated as forfeited. (*Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 201.) Plaintiffs could not, in any event, prevail on the merits.

While Plaintiffs do not discuss the requisite elements of a claim for intentional infliction of emotional distress, we do. "A cause of action for intentional infliction of emotional distress exists when there is ' " ' "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." ' " ' [Citations.] A defendant's conduct is 'outrageous' when it is so ' " 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' " ' [Citation.] And the defendant's conduct must be ' " 'intended to inflict injury or engaged in with the realization that injury will result.' " ' " (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050–1051; CACI No. 1600.) "It is not enough that the conduct be intentional and outrageous. *It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff* of whom the defendant is aware." (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903, italics added.)

Plaintiffs primarily premise their direct claims for infliction of emotional distress on Respondents' alleged cover up of Cindy's murder. In their fourth amended complaint, Plaintiffs alleged that defendants "lied to investigators about Cindy being depressed[,] . . . bribed the San Mateo County Coroner and the police[,] . . . threatened to sue the coroner if [he or she] did not do their bidding[,] . . . [and] lied to the police . . . to deflect attention away from the real murderers and to prevent Cindy's murder from being investigated." As a result of these actions, Plaintiffs "were made to believe that their daughter committed suicide," and "Defendants ensured that Cindy's murder would not be investigated."

In *Chu v. Naik, supra,* A142837, we affirmed demurrers of other defendants sustained by the trial court as to precisely the same allegations of the fourth amended complaint—primarily on the basis that Plaintiffs failed to plead that any of the alleged conduct was either directed at Plaintiffs or knowingly committed in their presence.[8] In sustaining Respondents' demurrers to the fourth amended complaint, the trial court granted Plaintiffs leave to amend "to allege facts showing that the post-death conduct forming the basis of [their] claims for emotional distress was directed at Plaintiffs."

In the fifth amended complaint, Plaintiffs reiterated the same allegations: Martin, Pfendt, Suleman, and Friesz, "covered-up the murder and lied to investigators about Cindy being depressed"; "Martin bribed the San Mateo County Coroner and the police"; and "Pfendt threatened to sue the coroner if they did not do their bidding." Plaintiffs again alleged that Hales made false statements to the police that "he had a crush on Cindy so as to deflect attention away from the real murderers" and to prevent the murder from being properly investigated. Plaintiffs further alleged that "[t]he police and coroner communicated Hales' lies to [P]laintiffs[.] Hales knew or should have known that his

---

[8] " 'Under the doctrine of the law of the case, a principle or rule that a reviewing court states in an opinion and that is necessary to the reviewing court's decision must be applied throughout all later proceedings in the same case, both in the trial court and on a later appeal.' " (*Water Replenishment Dist. of Southern California v. City of Cerritos* (2012) 202 Cal.App.4th 1063, 1071.)

7

lies to the police would be communicated directly to surviving [P]laintiffs who were suffered emotional distress upon hearing the abuse Hales perpetuated against Cindy before and after her murder." They asserted that "[d]efendants . . . communicat[ed] the lie[s] directly to [P]laintiffs after Cindy's death" and that defendants' conduct was "directed at surviving [P]laintiffs to ensure that they suffer emotional distress of the utmost degree . . . ," without indicating which "defendant" purportedly made this communication and when it was made. Additional allegations in the fifth amended complaint included the assertion that Respondents "bribed the county coroner's office and instructed [the pathologists] to telephone surviving [P]laintiffs to inform them that Cindy was an anorexic and severely depressed." In sustaining Respondents' demurrer, the trial court noted that the only communication allegedly made to Plaintiffs at the behest of Respondents was the assertion that Cindy was depressed and anorexic, the alleged purpose of which was to cover up a homicide—not to cause emotional distress.

Plaintiffs' only legal argument is that the rule enunciated in *Christensen v. Superior Court, supra,* 54 Cal.3d 868, is unduly restrictive and that "[i]mportant policy considerations" favor broader liability. They cite a Tennessee case (*Doe 1 v. Roman Catholic Diocese* (Tenn. 2005) 154 S.W.3d 22) holding that the tort of "reckless infliction of emotional distress" did not require that the wrongful activity be directed at a specific individual. (*Id.* at pp. 38–39.) Aside from the very different issues presented, and the significant distinctions drawn by the Tennessee court in its discussion ("a recklessness analysis is something unique which differs from analyses based strictly on either intent or negligence" (*id.* at p. 38)), we remain bound to follow our Supreme Court precedent (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455). The third cause of action in the fifth amended complaint continues to suffer from the same defects present in the fourth amended complaint, and Respondents' demurrer was properly sustained.

B.    *Negligence*

Plaintiff's fourth cause of action for negligence alleged that Respondents "occupied positions in which each owed a duty to [Cindy]." They assert that Martin,

8

Pfendt, and Suleman were Cindy's "supervisors" and that "[e]ach had a duty to prevent workplace harassment and violence against [Cindy]," which they violated "by not only failing to prevent workplace harassment, violence and murder but created, fosted [*sic*] and encouraged a hostile work environment of violence and murder . . . ."

Plaintiffs alleged that Hales, Suleman and Friesz "owed a duty toward [Cindy] not to interfere with the police investigation and the legal process," which they breached by "lying and misleading the police and neglecting to tell the truth." Plaintiffs assert that as a consequence of these breaches of duty "Cindy sustained serious and permanent injuries to her person, which subsequently led to her death . . . ." The damages alleged are injuries to Cindy's "reputation" (both before and after her death, and "serious mental distress." They also contend that Plaintiffs suffered injuries, including the expenses of the current litigation, and "emotional distress" as a result of all Respondents' participation in the "cover up" of the murder.

The trial court sustained the most recent demurrer to the negligence claim on the basis that Plaintiffs had failed to plead causation as to Respondents: "The facts describing the ultimate injury to Cindy are that defendant Vierra yelled at and verbally abused Cindy, beat her into unconsciousness, and then dumped her body from the rooftop. . . . The complaint contains no allegations describing any act by any of [the Respondents] that could be deemed a substantial cause of Cindy's death." Plaintiffs do not address this issue at all. Additionally, Plaintiffs submit no argument or authority here supporting the existence of any direct duty of any of the Respondents to Plaintiffs which would support a negligence claim.

Plaintiffs again provide no separate heading, nor any discussion or legal argument, dealing with the fourth cause of action in the fifth amended complaint. Any claim of error is therefore forfeited.[9]

---

[9] We also observe that much of the conduct alleged occurred after Cindy's death and could not have been the source of any cognizable injury to Cindy.

9

C.      *Negligent Supervision and Retention*

Plaintiffs fail to identify exactly which order they challenge with regard to the fifth cause of action in the fifth amended complaint.  However, it would appear that at issue is the June 26, 2013 order sustaining Martin, Pfendt, Suleman and Friesz's demurrer without leave to amend as to the claim of negligent retention and supervision in the third amended complaint.  The October 2, 2014 order striking without leave to amend the same allegations of the fourth amended complaint was premised on the prior sustained demurrer.

In *Chu v. Tribal Brands, Inc., supra,* A141730, the trial court sustained demurrers without leave to amend to the same fifth cause of action in the fourth amended complaint.  We affirmed, holding that while Cindy's employer (Tribal Brands/Tribal Technologies) may have owed Cindy a duty of care (see *Delfino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, 815 ["[n]egligence liability will be imposed upon the employer if it 'knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes' "]), "[n]either Tribal Technologies nor Tribal Brands, however, had any such duty to Plaintiffs.  With no preexisting relationship with Plaintiffs and no corresponding duty of care to them, Tribal Brands cannot be held liable in negligence (including negligent supervision and retention) with respect to Plaintiffs.  Therefore, the trial court correctly dismissed the direct claim for negligent supervision and retention as to Tribal Brands."

In *Chu v. Naik, supra,* A142837, the trial court sustained demurrers to the identical cause of action in the fourth amended complaint, as alleged against other individual defendants.  We held that "[t]he trial court correctly dismissed these claims as to Respondents.  '[E]xcept where a statutory exception applies, an employee or former employee cannot sue other employees based on their conduct relating to personnel actions,' even if the employees acted with malice.  (*Sheppard v. Freeman* (1998) 67 Cal.App.4th 339, 342; *id.* at pp. 346–347.)  Plaintiffs argue they should be given an opportunity to conduct discovery regarding Respondents' roles at the company, but such information would not save the claims because it would not change the fact that

10

Respondents are employees, not employers. Moreover, because Respondents could not have been held liable to Cindy for negligent supervision and retention, they also cannot be held liable to Plaintiffs for wrongful death action based on negligent supervision and retention. Plaintiffs argue *Sheppard* was wrongly decided, but at this point our adherence to *Sheppard* is law of the case. (*Quackenbush v. Superior Court* (2000) 79 Cal.App.4th 867, 874.)"

Plaintiffs argue here that Respondents may nevertheless be held liable because they are supervisors. They cite no authority for their position, and they ignore the fact that our prior holdings are law of the case. Moreover, they fail to acknowledge our holding in *Chu v. Tribal Brands, Inc., supra,* A141730, that Plaintiffs could not state a direct claim for negligent retention and supervision because no duty was owed to Plaintiffs, as opposed to Cindy. In that same appeal, we also held a survival cause of action for negligent retention and supervision was precluded by Code of Civil Procedure section 377.34,[10] which limits recoverable damages for a successor in interest to economic damages incurred prior to death. (*Chu v. Tribal Brands, Inc., supra,* A141730 ["[t]he survival claim for negligent supervision and retention alleges Cindy suffered mental anguish, pain and suffering, and death, all damages also barred by section 377.34"].)

The demurrers were properly sustained and the motions to strike properly granted.

D. *Denial of Leave to Amend*

Plaintiffs argue that they should have been given further leave to amend. Having repeatedly failed to address the fatal deficiencies in their pleading—despite clear statements from the trial court and this court identifying the defects—Plaintiffs fail to suggest what additional facts could be now be alleged. The burden of proving a

---

[10] "In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, *the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death*, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived, *and do not include damages for pain, suffering, or disfigurement*." (Code Civ. Proc., § 377.34, italics added.)

11

reasonable possibility that a pleading defect can be cured by amendment "is squarely on the [Plaintiffs]." (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.)  The court did not abuse its discretion in denying further leave to amend.

### III.    DISPOSITION

The judgment for Respondents is affirmed.  Respondents shall recover their costs on appeal.


_____
BRUINIERS, J.


WE CONCUR:


_____
JONES, P. J.


_____
SIMONS, J.