Filed 3/12/15  Chu v. Tribal Brands CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LI CHING CHU et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>TRIBAL BRANDS, INC., et al.,<br><br>        Defendants and Respondents. | A141730<br><br>(San Mateo County<br>Super. Ct. No. CIV508888) |

Cindy K. Hung (Cindy) died tragically after a fall at her workplace on October 21, 2010.[1]  Her death was ruled a suicide by the coroner.  Cindy's parents, appellants Li Ching Chu and Robert Ching Liang Hung (Plaintiffs), are convinced that their daughter was murdered and the true cause of her death has been covered up by an ongoing conspiracy.  Plaintiffs' wrongful death action, filed in 2011, has yet to proceed past the pleading stage.  At primary issue here are demurrers sustained by the trial court without leave to amend as to several individuals and one entity substituted for Doe defendants.  We reverse as to the wrongful death claim against an alleged alter ego entity, but affirm in all other respects.

## I.    BACKGROUND

As relevant here, Plaintiffs' fourth amended complaint asserted claims against Tribal Technologies (Cindy's employer), Joseph Vierra (Cindy's supervisor), Victoria Dinovich, Jeff Martin, Susan Pfendt, and multiple Doe defendants.  The claims arise from

---

[1] Consistent with appellants' briefing on appeal, we refer to the decedent by her first name.  We intend no disrespect.

1

Cindy's death at her workplace in October 2010. Cindy's body was found on the rooftop of a breezeway in the office building where she worked for Tribal Technologies. Her death was deemed a suicide. Plaintiffs allege that Tribal Technologies employees Vierra and Dinovich murdered Cindy with the assistance of the Doe defendants and all defendants covered up the crime. Plaintiffs assert claims for assault, battery, intentional infliction of emotional distress, negligence, negligent supervision and retention, obstruction of justice, wrongful death and "vicarious liability." We addressed this litigation in a previous appeal brought by a defendant not involved in the instant proceedings (*Chu v. Glenborough 400 ECR, LLC* (Apr. 9, 2014, A139167) [nonpub. opn.]).

Plaintiffs eventually identified several Doe defendants, including respondents Tribal Brands, Alison Baal Guerrero, Allen Morgan, Ashish Chordia, Candice Yusim, Dylan McIlhenny, and Steve Brickman. Chordia and Yusim successfully moved to quash service of process. Tribal Brands, Guerrero, Morgan, McIlhenny, and Brickman (Demurrer Respondents) successfully demurred and judgment was entered in their favor. Plaintiffs appeal from the judgment.

## II. DISCUSSION

### A. *Orders Quashing Service*

Plaintiffs argue on appeal that the trial court erred in quashing service on Chordia and Yusim, and that these respondents must reply on the merits. We conclude, however, that we lack jurisdiction to review these orders because Plaintiffs failed to file a timely appeal.[2]

Orders granting motions to quash are appealable orders. (Code Civ. Proc., § 904.1, subd. (a)(3).) On April 18, 2014, Chordia and Yusim served Plaintiffs with notices of entry of the orders granting their motions to quash. Thus, the time to appeal those orders expired 60 days later on June 17, 2014. (Cal. Rules of Court,

---

[2] We provided the parties an opportunity to brief this issue, as required by Government Code section 68081.

rule 8.104(a)(1)(B).) Insofar as the record discloses, only a May 5, 2014 notice of appeal from a "[j]udgment of dismissal after an order sustaining a demurrer" was filed by Plaintiffs prior to June 17, 2014. The May 2014 notice of appeal does not state that it seeks review of "[a]n order or judgment under Code of Civil Procedure section 904.1(a)(3)–(13)." Although Plaintiffs attached copies of the orders granting the motions to quash to their civil case information statement, that document does not establish appellate jurisdiction. Because the notice of appeal did not identify the appealable orders granting the motions to quash, we lack jurisdiction to review those orders and that portion of Plaintiffs' appeal is dismissed. (See *Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 239–240.)

B.      *Orders Sustaining Demurrers*

Plaintiffs argue the trial court erred in sustaining the Demurrer Respondents' demurrers without leave to amend. We review an order sustaining a demurrer de novo, exercising our independent judgment as to whether, as a matter of law, the complaint states a cause of action on any available legal theory. (See *Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501.) In doing so, we assume the truth of all material factual allegations together with those matters subject to judicial notice. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) If the demurrer was sustained without leave to amend, "we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.]" (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) If we find that an amendment could cure the defect, we will conclude that the trial court abused its discretion and reverse. Plaintiffs have the burden of proving that an amendment would cure the defect. (*Ibid.*)

On September 6, 2013, Plaintiffs filed amendments to their fourth amended complaint (Complaint), substituting Guerrero as Doe 11, Morgan as Doe 12, McIlhenny as Doe 24, and Brickman as Doe 46.[3] Tribal Brands was substituted as Doe 56 on

---

[3] The September 6, 2013 amendment substituted 44 named individuals as Does 9 through 51 and 55.

October 16, 2013.  Plaintiffs did not amend to include any specific factual allegations as to any of these new defendants.  The demurrer was therefore decided based on the sufficiency of the Doe allegations of the operative Complaint:  Plaintiffs alleged that Tribal Technologies and Does 1 through 50 operated jointly as a software developer, and that Glenborough 400 ECR, LLC and Does 51 to 100 jointly operated an office building where the software developer had its offices.

The Complaint asserts the following causes of action against Doe defendants, and the parties and trial court treated these causes of action as directed against the Demurrer Respondents:  assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress (entitled "negligence"), negligent supervision and retention, and wrongful death.  An obstruction of justice claim is asserted against only the operator of the office building.  The "vicarious liability" claim is asserted against only Tribal Technologies, and the parties and trial court treated this claim as directed against only Tribal Brands, not the other Demurrer Respondents.  Most of the specific allegations of misconduct (sexual harassment and exploitation, murder, and illegal coverup of the murder) were directed toward named individuals and Does 1 through 50, but the Complaint also alleges that "each of the defendants was the agent . . . of each of the remaining defendants."

1.    *Alter Ego and Vicarious Liability of Tribal Brands*

Tribal Brands argued that the Complaint failed to allege it had engaged in any unlawful conduct.  In opposition pleadings, Plaintiffs wrote:  "Tribal Brands shares the same CEO as Tribal Technologies, namely, defendant Jeff Martin.  It shares directors, employees, office space, and funding as Tribal Technologies.  It has the same address located at 400 South El Camino Real, 8th Floor, San Mateo, California.  The individual defendants operated under either Tribal Technologies or Tribal Brands according to whichever [wa]s convenient.  Tribal Brands is merely one of the corporate veils that the individual defendants used as window dressing for their operation of offering female employees in exchange for business.  It is the de facto corporate alter ego of defendant

4

Tribal Technologies and the individual defendants."[4] Plaintiffs asked for leave to amend their complaint as necessary to state valid claims for relief.

In reply, Tribal Brands wrote: "Plaintiffs argue that they need not state facts supporting a claim against Tribal Brands because Tribal Brands is the 'alter ego' of Tribal Technologies. The Fourth Amended Complaint does not allege that Tribal Brands is the alter ego of Tribal Technologies, nor does it allege any facts from which one might infer that the two entities are alter egos of one another." In its demurrer, Tribal Brands argued that Plaintiffs should not be granted further leave to amend because "Plaintiffs have already had the opportunity to amend their complaint four times and have not materially changed their substantive allegations. Although the DOE amendment naming Tribal Brands was filed recently, . . . Plaintiffs have had a full and fair opportunity to amend the allegations on which their claims against all DOE defendants are based many times over."[5]

On the merits, the trial court ruled without further explanation, "Plaintiff's theory that Defendant Tribal Brands is the alter ego of Tribal Tech is not persuasive." On the request for leave to amend, the court wrote, "The Court does not believe it is appropriate to allow leave to amend, as Plaintiff requests. There is no question that liberality is to be applied in allowing the amendment of pleadings. Defendant Tribal Brands is in fact bringing its first demurrer, as it has just recently been identified as a Doe Defendant. However, in light of the Court agreeing with Plaintiff that the amendment relates back to the original pleading, in essence Plaintiffs have had ample opportunity to allege sufficient

_____

[4] Explaining their late naming of Tribal Brands as a defendant, Plaintiffs wrote they were "genuinely ignorant of Tribal Brands' identity and the facts of its liability when the original complaint was filed. Tribal Technologies is a very small software start-up with a few employees. As such its affiliates, subsidiaries and alter ego identities are not a matter of public information. Further, Tribal Technologies and the individual defendants orchestrated an elaborate coverup including threats and payments to various individuals and authorities to prevent Cindy's murder from being investigated."

[5] According to the record in Plaintiffs' most recently filed appeal (*Chu v. Tribal Technologies* (Mar. 6, 2015, A143749) [order of dismissal]), a fifth amended complaint remains pending against Tribal Brands, Vierra, Dinovich and other individual defendants.

5

facts against Doe #56 in any of the prior incarnations of the pleadings, yet have failed to do so. This attack is bu[t] one of many on the 4thAC, so to suggest that there are facts available which would cure the defects seems unreasonable."

The trial court erred in summarily dismissing Plaintiffs' alter ego claim on the merits without granting leave to amend. "The requirements for applying the 'alter ego' principle are thus stated: ' " '[I]t must be made to appear that the corporation is not only influenced and governed by that person [or other entity], but that there is such a unity of interest and ownership that the individuality, or separateness, of such person and corporation has ceased, and the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.' " ' [Citations.] Among the factors to be considered in applying the doctrine are commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other. [Citation.]" (*Roman Catholic Archbishop v. Superior Court* (1971) 15 Cal.App.3d 405, 411, italics omitted.) Plaintiffs represented in opposition to the demurrers that they could allege Tribal Brands and Tribal Technologies had the same chief executive officer, directors, employees, office space and funding; that the individuals who ran the companies "operated under either Tribal Technologies or Tribal Brands according to whichever [was] convenient"; and that these two companies were only two of several "corporate veils" used to disguise the true nature of their business—"offering female employees in exchange for business." Tribal Brands did not contend in its reply that any of the allegations could not be made in good faith.

The trial court also wrote that Plaintiffs failed to establish Tribal Brands' vicarious (respondeat superior) liability for the alleged misconduct because they did not allege that any Tribal Brands employees committed any misconduct. However, if in fact it is the alter ego of Tribal Technologies, Tribal Brands would share Tribal Technologies' liability for the acts of its employees within the course and scope of their employment. The fourth amended complaint alleges that certain Tribal Technologies employees

6

harassed and murdered Cindy in circumstances that were alleged to be within the course and scope of their employment: Plaintiffs allege that, as part of the company's "business model," Tribal Technologies supervisors pressured female employees to provide sexual favors to clients and compete against each other in doing so,[6] and Tribal Technologies knew about and condoned supervisor Vierra's use of violence and murder to advance this program. Tribal Brands does not argue that the allegations are insufficient to establish Tribal Technologies' vicarious liability, which in turn would establish Tribal Brands' liability as Tribal Technologies' alter ego. "Vicarious liability," however, is not a cause of action but a basis for imposing liability on one entity for the acts of others. We discuss *post* which causes of action should be reinstated on the basis of Tribal Brands' alter ego and vicarious liability.

On the denial of leave to amend, the trial court wrote that Plaintiffs had "ample opportunity to allege sufficient facts against [Tribal Brands] in any of the prior incarnations of the pleadings, yet have failed to do so." However, the court failed to address Plaintiffs' representation, undisputed by Tribal Brands, that they had just recently learned of Tribal Brands' close connection with Tribal Technologies. To the extent the court denied leave to amend based on deficiencies in the underlying allegations against Tribal Technologies, those arguments are not before us in this appeal because they were

---

[6] The trial court wrote, "Plaintiff's opposition to the demurrer states that Defendant was actually operating as a prostitution ring, but this novel accusation in an opposition is not set forth in the pleadings." This is inaccurate. Under the heading, "The Working Girls of Defendant-Employer Tribal Technologies," Plaintiffs alleged that Tribal Technologies' supervisors "took advantage of their positions of power and abused female employees. These abuses included asking for sexual favors, threatening to fire them from their jobs if they do not accommodate[,] and murder. . . . [¶] . . . Business practices at Tribal were such that attractive women would be hired into each of [Tribal Technologies' two] factions regardless of their professional qualifications, as long as they were attractive, and are open to be used as pawns. In order to appeal to the broad and varied tastes of their clients, each faction is staffed with women of various sizes, ethnicity and age. They would . . . become romantically and sexually involved with Tribal's clients. The business that they brought in would be credited towards the respective factions to which they belonged."

7

not raised in Tribal Brands' demurrer. We conclude the trial court erred in denying Plaintiffs leave to further amend their Complaint to include factual allegations which would establish Tribal Brands' liability as an alter ego of Tribal Technologies.

2. *Code of Civil Procedure Section 377.34*

Demurrer Respondents argued below that the causes of action for assault and battery failed to state valid claims because damages sought in the Complaint were barred by Code of Civil Procedure section 377.34,[7] limiting recovery to a decedent's predeath economic losses. The trial court ruled that not only the assault and battery claims, but also the wrongful death claims, were barred by this statute. We conclude only the survival causes of action were barred by the statute.

a. *Survival Causes of Action/Noneconomic Damages*

Plaintiffs sued both in their individual capacities and as successors in interest to Cindy, and inferably asserted each cause of action in both capacities. As successors in interest to Cindy, Plaintiffs assert survival causes of action, i.e., causes of action that belonged to Cindy and survived her death. (See §§ 377.20, 377.30–377.35.)

As to survival causes of action, section 377.34 provides: "In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, *the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death*, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived, *and do not include damages for pain, suffering, or disfigurement*." (Italics added.) As aptly summarized by the trial court, "this statute limits recoverable damages for a successor in interest to economic damages incurred prior to death."

The survival causes of action for assault and battery are barred by section 377.34 because they do not allege economic damages incurred by Cindy before her death. Aside from pain, injury and death caused directly by the assault and battery, Plaintiffs alleged that these torts resulted in funeral and burial expenses, loss of companionship, the cost of

---

[7] Undesignated statutory references are to the Code of Civil Procedure.

a forensic pathologist, loss of Cindy's income, and resources spent to bring the instant lawsuit—all damages incurred after Cindy's death. Plaintiffs also alleged they incurred "hospital, medical, professional and incidental damages," but other allegations of the Complaint (i.e., that the paramedics arrived too late to help Cindy) reflect that these too were incurred after Cindy's death. Plaintiffs do not argue otherwise on appeal. Plaintiffs alleged that as a result of the assault and battery, "property owned and used by [Cindy] was damaged; and [P]laintiffs, thereafter, were denied use[] of said vehicle and other property, to Plaintiffs' further damage." This appears to be a reference back to an allegation that, apparently after Cindy's death, "defendants located Cindy['s] car, broke into the rear window and cleaned out all of the evidence of their crime. As a result, [P]laintiffs were deprived of the use of this car because it is now evidence of the murder." The complaint does not establish a causal connection between the assault and battery and the alleged damage to or loss of use of Cindy's vehicle, and Plaintiffs do not argue on appeal that any alleged property damage provides the missing predeath economic damage element necessary to save these claims from dismissal under section 377.34. We therefore affirm the trial court's dismissal of the survival assault and battery claims.

The survival claims for intentional and negligent infliction of emotional distress are by definition barred by section 377.34 because the damages for such torts consist of emotional suffering. (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903.) The survival claim for negligent supervision and retention alleges Cindy suffered mental anguish, pain and suffering, and death, all damages also barred by section 377.34. In sum, Plaintiffs failed to state any valid survival causes of action against the Demurrer Respondents.

### b. *Wrongful Death Cause of Action*

The trial court erred in ruling that Plaintiffs' wrongful death cause of action failed under section 377.34. Wrongful death is a statutory cause of action held by certain persons for the wrongful death of another. (§ 377.60.) Those persons include, "if there is no surviving issue of the decedent, the persons . . . who would be entitled to the property of the decedent by intestate succession" (§ 377.60, subd. (a)), and includes parents who

9

were dependent on the decedent. (§ 377.60, subd. (b); Prob. Code, § 6402, subd. (b).) Plaintiffs are within the class of potential plaintiffs.

In a wrongful death action, "damages may be awarded that, under all the circumstances of the case, may be just, but may *not* include damages recoverable under Section 377.34." (§ 377.61, italics added.) The obvious intent of the latter clause is to prevent a double recovery when both a survival action and a wrongful death action can be maintained. As relevant here, the significant point is that section 377.34's restrictions on recoverable damages do *not* apply to wrongful death actions; on the contrary, all damages as may be just may be awarded. The trial court, therefore, erred in ruling that section 377.34 bars recovery under the wrongful death cause of action.

3.      *Direct Claims for Assault, Battery and Wrongful Death*

We consider whether Plaintiffs stated valid *direct* (as distinct from survival) claims for assault and battery and whether their wrongful death claim fails on any other grounds.

Plaintiffs do not allege that any defendant committed assault or battery against them, only that they suffered some consequential harm due to assault and battery against Cindy. But they cite no legal authority allowing them to recover for consequential harm resulting from assault and battery on another. Therefore, the direct claims for assault and battery were properly dismissed.

Tribal Brands argued that Plaintiffs failed to state a valid wrongful death claim as to it because they alleged no conduct by Tribal Brands that contributed to Cindy's death. We have concluded, however, that Plaintiffs made a sufficient showing that they could amend the Complaint to allege alter ego liability of Tribal Brands for the acts of Tribal Technologies, and no argument is before us that the Complaint fails to allege Tribal Technologies' vicarious liability for the acts of its employees in causing Cindy's death (including their alleged acts of assault and battery that contributed to her death).[8]

_____

[8] As the only basis for liability of Tribal Brands asserted by Plaintiffs is alter ego, Plaintiffs can pursue claims against Tribal Brands only to the extent that pleading allegations remain viable as to Tribal Technologies.

10

Accordingly, we conclude the trial court erred in dismissing the wrongful death claim against Tribal Brands.

As to the individual Demurrer Respondents (Guerrero, Morgan, McIlhenny, and Brickman), Plaintiffs have alleged no facts that would establish their vicarious liability for Vierra's and Dinovich's alleged assault, battery and wrongful killing of Cindy. Plaintiffs represented in their opposition papers that Guerrero was a Tribal Brands employee, Morgan was on the Tribal Technologies board of directors, and Brickman and McIlhenny were managers at Tribal Technologies or Tribal Brands. Nothing in those allegations, even if included in an amended complaint, would establish any personal acts by these individuals that would make them liable for the assault, battery or wrongful death of Cindy. Therefore, these claims were properly dismissed as to these respondents.

4.    *Direct Emotional Distress Claims*

Plaintiffs premise their direct claims for infliction of emotional distress on the defendants' alleged coverup of Cindy's murder. They allege the defendants "lied to investigators about Cindy being depressed[,] . . . bribed the San Mateo County Coroner and the police[,] . . . threatened to sue the coroner if [he or she] did not do their bidding[,] . . . [and] lied to the police . . . to deflect attention away from the real murderers and to prevent Cindy's murder from being investigated." As a result of these actions, Plaintiffs "were made to believe that their daughter committed suicide" and "Defendants ensured that Cindy's murder would not be investigated."

The trial court correctly ruled that these allegations fail to state a valid claim for intentional infliction of emotional distress because none of the alleged conduct was directed at Plaintiffs or knowingly committed in their presence. To be actionable, intentional infliction of emotional distress "must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." (*Christensen v. Superior Court, supra,* 54 Cal.3d at p. 903.) The Complaint alleges that "defendants" lied to police and the coroner's office, not to Plaintiffs themselves.

In opposition to the demurrer, Plaintiffs wrote that respondents "told [P]laintiffs, Cindy's surviving parents, that Cindy had committed suicide." However, the

11

Complaint's detailed allegations of the coverup cite false statements by defendants only to police or the coroner's office, and none directly to Plaintiffs. The only false statements alleged to have been made to Plaintiffs' representative were statements by the police and coroner, not by the defendants. Plaintiffs do not set forth any facts identifying any defendant who purportedly said anything directly to Plaintiffs, nor do Plaintiffs allege when and where such statements, if any, were made. Plaintiffs did not argue in opposition to the demurrer, and make no suggestion here, that they could amend their complaint to allege in good faith that any false statements about suicide were made to them by any defendant directly. No such claim was made in any of the prior complaints. Since Plaintiffs make no proffer in support of a further amendment, and made no request to amend, we assume they cannot. (*Ortega v. Contra Costa Community College Dist.* (2007) 156 Cal.App.4th 1073, 1080 [a plaintiff has the burden of proving that an amendment would cure the defect].)

The trial court also correctly ruled that the negligent infliction of emotional distress claim failed because Plaintiffs alleged no preexisting relationship with the Demurrer Respondents that would give rise to a duty of care. "[A] cause of action to recover damages for negligently inflicted emotional distress will lie . . . in cases where a duty arising from a preexisting relationship is negligently breached. [Citations.]" (*Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1074.) Here, defendants' preexisting relationship was with Cindy, not Cindy's parents.

In sum, the negligent and intentional infliction of emotional distress claims were properly dismissed as to all of the Demurrer Respondents.

5. *Direct Negligent Supervision and Retention Claim*

The cause of action for negligent supervision and retention alleges that Tribal Technologies negligently failed to investigate the backgrounds of Vierra and Dinovich, who allegedly murdered Cindy. Purportedly, such an investigation would have disclosed "that Vierra had a history of training female subordinates to seduce clients in order to win business," that Dinovich was participating in this sexual conduct, and that Vierra had a "history of violent behavior and murder against women." Allowing Vierra to work at

12

Tribal Technologies as Cindy's supervisor and carry out his schemes with Dinovich's help contributed to Cindy's death. The trial court dismissed the claim as to Tribal Brands because Plaintiffs did not allege either Vierra or Dinovich was employed by Tribal Brands. Because we have concluded that the court should have allowed Plaintiffs to amend their complaint to assert alter ego liability against Tribal Brands, this ground for the court's ruling fails. But the ruling was correct for a different reason.

" 'An employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit. [Citation.]' [Citation.] Negligence liability will be imposed upon the employer if it 'knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes.' [Citation.]" (*Delfino v. Agilent Technologies, Inc.*(2006) 145 Cal.App.4th 790, 815.) The employer owed *Cindy* a duty of care as its employee. Neither Tribal Technologies nor Tribal Brands, however, had any such duty to Plaintiffs. With no preexisting relationship with Plaintiffs and no corresponding duty of care to them, Tribal Brands cannot be held liable in negligence (including negligent supervision and retention) with respect to Plaintiffs. Therefore, the trial court correctly dismissed the direct claim for negligent supervision and retention as to Tribal Brands.

Plaintiffs' wrongful death claim against Tribal Brands, however, may be premised on alter ego liability for Tribal Technologies' negligent supervision and retention of Vierra, leading to Cindy's wrongful death. (Cf. *Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 300–304 [analyzing wrongful death claim based on an allegation that intentional infliction of emotional distress caused decedent to commit suicide].) The wrongful act underlying a wrongful death claim is directed toward the decedent, not the plaintiff. (See, e.g., *ibid.*)

As to the individual Demurrer Respondents, Plaintiffs' direct claims for negligent supervision and retention also fail because the individual respondents, even if they had some responsibility for supervision and retention of other employees (and there are no pleading allegations that they did), owed no duty of care to Plaintiffs. "[E]xcept where a statutory exception applies, an employee or former employee cannot sue other employees

13

based on their conduct relating to personnel actions," even if the employees acted with malice. (*Sheppard v. Freeman* (1998) 67 Cal.App.4th 339, 342; *id.* at pp. 346–347.) Because the individual Demurrer Respondents could not have been held liable to Cindy for negligent supervision and retention, Plaintiffs also cannot maintain a wrongful death action against them based on negligent supervision and retention.

The trial court properly dismissed the direct negligent supervision and retention claims against the Demurrer Respondents, although negligent supervision and retention may form the basis of Plaintiffs' potentially valid wrongful death claim against Tribal Brands.

6.    *Punitive Damages*

The trial court dismissed all of Plaintiffs' claims for punitive damages because "[i]n the absence of actual damages, Plaintiffs may not recover punitive damages. (Civ. Code, § 3294, subd. (a) [punitive damages recoverable 'in addition to' actual damages].)" The trial court earlier sustained the demurrer of Tribal Technologies to the punitive damage allegations of the Complaint with leave to amend. Plaintiffs' ability to state a cognizable claim against Tribal Brands for punitive damages is therefore entirely dependent upon the outcome of Plaintiffs' similar claim against Tribal Techologies.

## III.    DISPOSITION

Plaintiffs' purported appeal from the orders granting Chordia's and Yusim's motions quashing service of process is dismissed for lack of jurisdiction.

The March 11, 2014 "Order Sustaining Demurrer of Defendant Tribal Brands, Inc. Without Leave to Amend and Denying Motion to Strike as Moot" is reversed with respect to Plaintiffs' wrongful death cause of action and affirmed in all other respects. On remand, the court shall grant Plaintiffs leave to amend their fourth amended complaint to state a wrongful death cause of action against Tribal Brands.

The April 2, 2014 "Order Sustaining Demurrer of Defendants Allen Morgan, Steve Brickman and Dylan McIlhenny Without Leave to Amend" and the April 15, 2014 "Order Sustaining Demurrer of Alison Guerrero to Fourth Amended Complaint" are affirmed.

14

The May 8, 2014 "Judgment and Dismissal as to Defendants Tribal Brands, Inc., Alison Guerrero, Allen Morgan, Steve Brickman, and Dylan McIlhenny" is reversed as to Tribal Brands and affirmed as to the other defendants.

Each side shall bear its own costs on appeal.

_____

BRUINIERS, J.


WE CONCUR:


_____

SIMONS, Acting P. J.


_____

NEEDHAM, J.